**James E. JONES, Petitioner-Appellant,**

v.

**STATE OF WISCONSIN,
Respondent-Appellee.**

No. 77–1104.

United States Court of Appeals,
Seventh Circuit.

Argued June 6, 1977.

Decided Sept. 20, 1977.

Charlene R. Bohl, Steven D. Phillips, law student, Madison, Wis., for petitioner-appellant.

Bronson C. La Follette, Atty. Gen., John M. Schmolesky, Asst. Atty. Gen., Madison, Wis., for respondent-appellee.

Before FAIRCHILD, Chief Judge, TONE, Circuit Judge, and DECKER, District Judge.*

DECKER, District Judge.

### I.

This action was brought by petitioner-appellant, James E. Jones, to obtain a writ of *habeas corpus.* He contends that under Wisconsin law his plea of guilty must be vacated because it was entered after an erroneous ruling of the Wisconsin trial court admitting the in-court identifications of the appellant by two eye-witnesses to the crime. Jones argues that these identifications were tainted by previous improper and highly suggestive identification procedures.

While the trial judge found that these earlier identifications were obtained by "unconstitutionally suggestive" methods,[1] he ruled, after a hearing pursuant to *U. S. v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), that the in-court identifications had not been tainted by the earlier confrontations. Following the denial of his motion to suppress the identifications, Jones changed his plea to guilty. He expressly reserved the right to appeal the denial of the suppression motion, in accordance with Wisc.Stats. § 971.31(10).[2] The petitioner's plea was accepted without introduction of any supporting evidence other than the eye-witness testimony elicited at the suppression hearing. Jones was convicted, and sentenced to fourteen years incarceration.

The petitioner appealed the denial of the motion to suppress the in-court identifications. The Wisconsin Supreme Court affirmed the lower court's ruling in *Jones v. State*, 59 Wis.2d 184, 207 N.W.2d 890 (1973).

In June 1973, Jones filed a petition for writ of *habeas corpus* in the United States District Court for the Eastern District of Wisconsin. The petition was denied on the ground that Jones had waived his right to challenge the constitutional infirmities of his conviction in a federal *habeas corpus* proceeding by entering his guilty plea. Judge Tehan therefore did not consider the merits of Jones' claim.

On appeal, this court reversed Judge Tehan's order, holding that under *Lefkowitz v. Newsome*, 420 U.S. 283, 95 S.Ct. 886, 43 L.Ed.2d 196 (1975), the petitioner was entitled to the same remedies in a federal *habeas corpus* action as exist in the state courts of Wisconsin.

The case was remanded to the District Court. Chief Judge Reynolds concluded that the methods used at the initial identifications were indeed suggestive and impermissible. He found, however, that these procedures tainted the in-court identification of only one of the eye-witnesses, Georgia Lindow, and that the identification by the other witness, James Gallow, was therefore reliable and admissible. The district court denied the petition for a writ of *habeas corpus* on the grounds that Jones' guilty plea need not be vacated where one of the in-court identifications was properly admitted. The instant appeal was brought in response to this ruling.

### II.

The offense to which Jones pled guilty was a charge of armed robbery (masked). The Gallo Pharmacy in Kenosha, Wisconsin, was robbed by three masked men on July 17, 1971, at about 5:30 P.M. Two of the eye-witnesses to the robbery were Georgia Lindow, an employee of the pharmacy, and James Gallo, the son of the owner.

* The Honorable Bernard M. Decker, District Judge of the United States District Court for the Northern District of Illinois, is sitting by designation.

1. The trial judge also noted that Jones had been denied the aid of counsel during the identification procedures.

2. Section 971.31(10) provides:

"An order denying a motion to suppress evidence or a motion challenging the admissibility of a statement of a defendant may be reviewed upon appeal from a judgment of conviction notwithstanding the fact that such judgment was entered upon a plea of guilty."

An armed man opened the door to the back room where Lindow was working, grabbed her by the arm, and told her to lie on the floor with her hands stretched out in front of her. When she lifted her head, the man she identified as the petitioner was kneeling less than ten feet away. He pointed a gun at her and told her to keep her head down. She was able to observe this robber for thirty to forty seconds under good lighting conditions. She noted that he was masked from the nose down, and wore a hat with a floppy brim. She was also aware of his high cheekbones and wide forehead.

Gallo observed at least one of the robbers behind the pharmacy. It was daylight and he was no more than a foot away from this individual. He was able to note the robber's size, build, dark clothing, hat, and his facial features which were marked by high cheekbones.

Within a week of the robbery both eye-witnesses were shown photographs of eight black males. This procedure—which was performed independently before each witness—is not challenged by the appellant.

Gallo identified two of the photographs as those of two of the men involved in the robbery. One of these was of the appellant. He stated that, to the best of his knowledge, this was the man as he remembered him from the day of the robbery.

Lindow stated that a picture of the appellant resembled the man who had told her to keep her head down, but added that she was not positive of her identification.

Several days later Jones was arrested as a possible parole violator, and was brought to the Kenosha City Jail. The challenged show-ups ensued.

At the first show-up, Gallow and Lindow viewed the appellant through a one-way mirror at the police station. Jones was the only black man in the room, and was accompanied by at least one police officer. Gallo and Lindow were permitted to discuss the robbery together prior to viewing the suspect. Gallo then identified Jones as the robber, stating, "to the best of my knowl-

edge, that's the man I saw July 17." This statement was made in the presence of Lindow. Lindow, however, was unable to make a positive identification, and requested to hear the appellant's voice, as the best means of identifying the robber.

After the show-up the police played to Gallo and Lindow a tape recording of a conversation between Jones and a detective. Lindow remained unable to make positive identification. She requested another opportunity to view the suspect.

At the next show-up Jones was brought into a room in the jail where Lindow was seated. She did not make any immediate identification. Jones was instructed to sit opposite her, approximately four feet away. Pursuant to police orders Jones repeated the statement allegedly made during the robbery. Lindow still did not make any identification. Then, in the presence of Lindow, the detective informed Jones that he had failed a lie-detector test. After some listening to some further conversation, Lindow identified the petitioner as the robber. Jones was the only black person in the room and the only person asked to repeat the threat uttered at the robbery. Lindow was never asked to listen to any other person's voice for identification purposes.

At a later date both Gallo and Lindow went to Racine to view a line-up, which did not include petitioner Jones. Gallo identified a man other than the petitioner as one of the robbers.

Both eye-witnesses identified Jones at the Wade hearing. Each of them stressed the petitioner's facial characteristics. Gallo also relied upon Jones' build and size, and added that his opinion had remained unchanged since he had first been shown Jones' photograph. The trial judge noted that both witnesses stated that their in-court identifications were based upon their observations at the robbery rather than any impressions formed at the show-ups.

### III.

■ In *U. S. v. Wade, supra*, 388 U.S. at 239–41, 87 S.Ct. 1926, the Supreme Court

held that the use of unconstitutional methods to obtain an out-of-court identification did not *per se* compel the exclusion of a subsequent in-court identification. The later identification may be admissible if it is based upon observations of the suspect independent of the suggestive confrontation. Essentially the factual question is whether the improper procedures were so suggestive that they were "conducive to irreparable mistaken identification." *Stovall v. Denno*, 388 U.S. 293, 302, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967). The burden is upon the state to demonstrate by clear and convincing evidence that the prior confrontation neither irreparably affected the witness' recollection of the criminal, nor permanently tainted his capacity to make an identification based solely upon his original observations. *U. S. v. Wade, supra*, 388 U.S. at 240, 87 S.Ct. 1926; *U. S. v. Grose*, 525 F.2d 1115, 1118 (7th Cir. 1975); *Martin v. State of Indiana*, 521 F.2d 682 (7th Cir. 1975).

■ The evaluation of the admissibility of an identification made by a witness subsequent to an unduly suggestive confrontation entails a "totality of the circumstances" test. *Stovall v. Denno, supra*. The Supreme Court listed the factors relevant to such an evaluation in *Wade, supra*, 388 U.S. at 241, 87 S.Ct. 1926, and reiterated these guidelines in *Neil v. Biggers*, 409 U.S. 188, 199–200, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). The factors include (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of any prior description of the criminal given by the witness; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) the length of the interval between the crime and the confrontation. In sum, where the pre-trial identification was both unduly and gratuitously suggestive, the court must apply these factors to determine the reliability of any subsequent identification. *Israel v. Odom*, 521 F.2d 1370 (7th Cir. 1975); *U. S. ex rel. Kirby v. Sturges*, 510 F.2d 397 (7th Cir. 1975).

## IV.

Neither the trial judge nor the Wisconsin Supreme Court attempted to analyze the entire circumstances relating to the in-court identifications made by Gallo and Lindow. By contrast, Chief Judge Reynolds carefully applied the *Neil v. Biggers* test in the manner mandated by *Israel v. Odom* and *Kirby v. Sturges*. The court finds that the district court properly evaluated the facts of this case under the correct standard, and that his findings as to the reliability of the identifications made by the two eye-witnesses are not erroneous.

■ There is really no dispute that Lindow had a good opportunity to view the robber, and was quite attentive during the crime. She had ample time to gather an impression of the criminal under good lighting circumstances. Neither the two-week interval between the crime and the show-ups, nor the four and a half month span before the *Wade* hearing was so great as to undercut a witness' reliability. There is no record of any description of the robber given by Lindow prior to the show-ups.

Chief Judge Reynolds correctly focused upon Lindow's uncertainty during the identification process. His conclusion that the "uncertainty she demonstrated at the confrontations is fatal to her reliability" cannot be viewed as erroneous.

The record reveals that she was unwilling to positively identify the petitioner-appellant upon the basis of the photographic array. She was no more certain at the first show-up, when she requested an opportunity to hear his voice. This, too, was not enough to enable her to express a certain opinion as to the identity of the robber. Even at the second show-up she was not willing to make an identification until after she had heard the detective state that Jones had failed a lie-detector test.

Such hesitance to make a definite identification cannot be equated with "a natural and proper reluctance to misidentify an innocent party". *Israel v. Odom, supra*, at 1376. In *Israel v. Odom* the witness also required a voice sample before making a positive identification. But, unlike the in-

stant case, she said she was "sure" of the suspect's identity promptly after hearing his voice, and indeed became hysterical when brought into his immediate presence. *Israel v. Odom* accepts the reliability of a thoughtful witness who displays some initial caution before making a commitment to a definite identification. It does not apply where a witness remains uncertain through repeated suggestive encounters with a suspect. At some point the inability to make a positive identification ceases to be natural reluctance and caution, and must be viewed as demonstrating doubt and uncertainty.

During the entire period while she steadfastly refused to commit herself to the identity of the defendant, Lindow was subjected to patent suggestions that the police and her fellow witness *expected* her to name the petitioner. After the photographic array she was never shown any other potential suspect, nor allowed to hear tapes or voice samples of any other person. Jones was brought before her in a manner revealing that he had been arrested as a suspected criminal. She had the opportunity to note the positive identification made by Gallo. Finally, the police resorted to a statement calculated to convey the impression that they had scientific proof of Jones' guilt.

The Supreme Court has noted in *Foster v. California*, 394 U.S. 440, 443, 89 S.Ct. 1127, 22 L.Ed.2d 402 (1969), that repeated subjection to suggestive methods makes an eventual identification "all but inevitable". In *Foster* the witness failed to identify the petitioner at an initial suggestive line-up. As in the case of Georgia Lindow, he asked to hear the suspect's voice, and remained unable to make an identification despite an improper one-to-one confrontation. The witness in *Foster* finally identified the petitioner at a second line-up. In the instant case the second confrontation was not even a line-up, and nonetheless required highly suggestive comments to elicit an identification. Even more so than in *Foster*, the police were in effect saying to the witness, "*This* is the man."

Under these circumstances the court cannot place great reliance upon the fact that this witness made "emphatic denials that the in-court identifications were based on or affected by the police station identifications." *Jones v. State*, 59 Wis.2d at 197, 207 N.W.2d at 897. While the trial judge is best able to evaluate the credibility of the witnesses, the factual question here is not one of credibility at all. There is no reason to doubt the sincerity of the witness that her identification was an honest one. But the very harm of an irreparably suggestive confrontation is its capacity to render the witness unable to separate initial recollections from those affected by prejudicial police actions.

In considering a *habeas corpus* petition from one in state custody the findings of fact made by the state court are presumed correct, unless certain circumstances delineated in 28 U.S.C. § 2254(d) are shown to have affected the state proceedings. The court has no quarrel with the findings of Judge Bode as to Georgia Lindow's credibility or her opportunity to observe and identify the robber. Nonetheless, we find that the trial court failed to apply the *Neil v. Biggers* standard to the highly material facts revealing her uncertainty in the face of an extremely suggestive identification procedure. This case therefore falls within the exceptions found at § 2254(d)–(3), (7) and (8). By contrast, the district court analyzed all the relevant facts and applied the correct legal standard. Its conclusion that Georgia Lindow's capacity to make a reliable identification had been tainted by the pre-trial confrontations cannot be viewed as erroneous.

V.

■ The court similarly finds that the district court correctly analyzed under the *Neil v. Biggers* standard the relevant facts relating to the in-court identification made by James Gallo. There is no real dispute regarding Gallo's opportunity to view the robber; he viewed him for a minute in broad daylight at a distance of approximately one foot. Nor can it be seriously alleged that he was not attentive at the

time of the crime. The court does not find his failure to mention the mask worn by the criminal sufficient to undermine his reliability. Nor is it fatal to his reliability that Gallo also identified another individual as one of the robbers at a line-up conducted in Racine. The petitioner was not in the Racine line-up. What is dispositive of his reliability is the fact that Gallo was able to promptly identify the petitioner as one of the robbers each time he was shown Jones' photograph or person.

## VI.

While the court accepts Judge Reynolds' findings as to the admissibility of the in-court identifications, it nonetheless must reverse the district court's order for failure to correctly apply the Wisconsin statute. The opinion of the district court does not contain any explanation of its interpretation of Wisc.Stats. § 971.31(10). After finding that Gallo's in-court identification was admissible, the district court merely concluded that "[f]or the foregoing reasons" the petition should be denied.

As noted, § 971.31(10) permits a criminal defendant to enter a plea of guilty while preserving his right to appeal an adverse evidentiary ruling. The law was enacted to reduce the number of fully contested trials where the real controversy hinges upon a suppression issue. *State v. Meier*, 60 Wis.2d 452, 210 N.W.2d 685 (1973).

The petitioner-appellant argues that a guilty plea must automatically be vacated whenever a defendant successfully asserts a constitutional claim which is specifically appealable under state law. The state counters that this statute should be applied under a "case by case" approach. Its position is apparently that a guilty plea should be vacated only where required by "the particular facts and evidence involved". Although it attempts to distinguish this "case by case" approach from a "harmless error" standard, the state does not proffer any workable standard for the application of the statute. The state does argue, however, that a new trial is not appropriate where evidence is admissible against a defendant

which is not "qualitatively different" from that which has been suppressed on appeal.

Closer analysis reveals that the "qualitatively different" standard is no more useful than the "case by case" phraseology. The significance of different types of evidence cannot be frozen into an inflexible hierarchy. More importantly, the state's argument fails to perceive the true significance of a ruling that a portion of the evidence underlying a guilty plea should have been suppressed.

The court agrees with the analysis made by the Supreme Court of California, in *People v. Hill*, 12 Cal.3d 731, 117 Cal.Rptr. 393, 528 P.2d 1 (1974), construing a similar statute. That opinion noted that only the defendant is in a position to evaluate "the impact of a particular erroneous refusal to suppress evidence." 12 Cal.3d at 768, 117 Cal.Rptr. at 421, 528 P.2d at 29. Only the defendant can determine the defenses he has to impeach, discredit or otherwise undermine the evidence available to the prosecution. The court correctly noted that:

> "We cannot, with any assurance, conclude that an appellate court, which does not have the benefit of that knowledge, can consistently arrive at an accurate assessment of whether the defendant would again plead guilty after knowledge that some but not all of the challenged evidence is to be suppressed." 12 Cal.3d at 768, 117 Cal.Rptr. at 421, 528 P.2d at 29.

■ Even without any knowledge of the arguments which might have been advanced by Jones against testimony by Gallo, it is clear that the elimination of a second eye-witness would clearly have altered the balance of the case to some extent. There is a great difference between a one-on-one dispute between a defendant's version and that of a single witness, and the situation where the witness' story is corroborated.

The Wisconsin statute encourages guilty pleas. In doing so it entails the waiver of some very fundamental entitlements, including the right to a jury and the right to confront hostile witnesses at trial. The objective of the statute is obtained by guaran-

teeing to the defendant that he will have a full trial in the event that after appeal the state's evidence is weaker than it appeared at the time of the trial court's evidentiary rulings. The statute would be a "trap for the unwary", *Lefkowitz v. Newsome*, 420 U.S. 283, 293, 95 S.Ct. 886, 43 L.Ed.2d 196 (1975), if it deprived a defendant of these rights even after he prevails on some of his evidentiary objections.

Furthermore, it appears that the Wisconsin Supreme Court has itself recently rejected the "case by case" interpretation of the statute advanced by the state. In *State v. Monahan*, 76 Wis.2d 387, 401, 251 N.W.2d 421 (1977), that court refused to adopt a harmless error interpretation of § 971.-31(10). The two terms cannot be meaningfully distinguished. In its brief before this court the state seeks to treat the "harmless error" standard as limited to cases where there had been a full trial. Monahan, however, pled guilty pursuant to § 971.31(10). It is therefore clear that the "harmless error" interpretation rejected by the Wisconsin Supreme Court in fact should apply to all cases in which an appellate court is asked by the state to gauge the impact of wrongfully admitted evidence upon a defendant's guilty plea.

### VII.

In conclusion, the court sustains the finding of the district court that the in-court identification of the petitioner-appellant made by Georgia Lindow was tainted by the earlier improper identification methods, and concurs in the conclusion that this identification should have been suppressed by the trial court. It further sustains the district court's finding that the in-court identification made by James Gallo was admissible.

Since the court holds that a guilty plea entered pursuant to Wisc.Stats. § 971.31(10) must be vacated where the trial court failed to suppress inadmissible evidence, the order of the district court denying the writ of *habeas corpus* is hereby ordered reversed, and the instant case is hereby remanded for the entry of an order in accordance with this opinion.