STATE of Wisconsin, Plaintiff-Respondent,

v.

Mark A. REICHL, Defendant-Appellant.†

Court of Appeals

*No. 82–1832–CR. Submitted on briefs May 23, 1983.—Decided August 9, 1983.*

† Petition to review denied.

For the appellant the cause was submitted on the briefs of *Steven D. Phillips,* assistant state public defender.

For the respondent the cause was submitted on the briefs of *Bronson C. La Follette,* attorney general, and *Kirbie Knutson,* assistant attorney general.

Before Foley, P.J., Dean and Cane, JJ.

CANE, J.   Mark Reichl appeals from convictions of second-degree murder and armed robbery.  He contends that he was arrested without probable cause and therefore his inculpatory statements to the police and the incriminating physical evidence should have been suppressed at trial.  The sole issue is whether Reichl was under arrest when he accompanied the investigating officers to the police station for questioning.  The state agrees that the officers did not have probable cause to

arrest Reichl until, in response to the questioning at the police station, he admitted his participation in the crimes. The state also agrees that if an illegal arrest occurred, the connection between the arrest and the incriminating evidence cannot be sufficiently attenuated to permit its admission. Because the trial court correctly concluded that Reichl was not under arrest, but rather voluntarily consented to accompany the officers to the police station, we affirm.

Detective Arthur Wellner knew that Reichl and Christopher Moyer had been seen with the murder victim, Dennis Mousakis, on the day of his death. Wellner and two other officers went to Reichl and Moyer's residence in the course of their investigation to gather information about the victim. A fifteen-year-old boy at the home informed the officers that Reichl and Moyer were expected back later. Wellner told the boy to advise Reichl and Moyer that the police wanted to talk to them and that they should call the police station or come down to the station on their own. After the boy relayed the message, Moyer telephoned the police station stating that he heard there was a detective at the house looking for him. The police dispatcher said he believed a detective had been at Moyer's residence but he did not know where the detective was then. After determining that Moyer was calling from his home, the dispatcher stated, "I can have him stop back if you want me to." Moyer responded "okay, I should be here for quite a while then."

Detectives Wellner, Daniel Zell, and Gary Martine, all in plain clothes, returned to the residence where they were met by Moyer wearing an outdoor jacket and prepared to accompany them to the police station. Wellner asked where Reichl was, and Moyer said that he was right around the corner. Reichl then came in, wearing his coat and prepared to accompany them to the station. Wellner stated that he wanted to talk to them at the

police station and they said "all right." Reichl and Moyer made no comment about being asked to go to the station, nor did they ask why the investigators wanted to talk to them. The detectives did not state whether Reichl and Moyer had to go to the police station.

Wellner testified that he lacked probable cause to make any arrest and had no intention of arresting either Reichl or Moyer. He regarded them as suspects, but was basically looking for information. He also testified that if either Moyer or Reichl had declined to accompany them to the police station, he would have tried to talk them into going. If unsuccessful, he would have left them at the house. If they fled, he could do nothing. Zell testified that he simply considered Reichl and Moyer as the last people to have seen Mousakis and did not consider them as prime suspects. He would not have tried to stop them from running away and knew he could not force them to go to the police station because there was no probable cause to make an arrest. Martine testified that Reichl showed no hesitance or reluctance to accompany them. He also testified he would not have stopped Reichl or Moyer from leaving the residence or police car. The two officers who questioned Reichl and Moyer at the station also stated that they did not consider Reichl under arrest and that they would have allowed him to leave at any time. Reichl never asked to leave. Reichl later confessed to the police that, before telephoning the station, he and Moyer fabricated a story to tell the police. Neither Reichl nor Moyer were told that they were under arrest nor were they ever handcuffed or restrained. They were taken in an unmarked police vehicle to an unlocked interrogation room at the station where the detectives advised them of their *Miranda* rights. Reichl acknowledged and waived those rights and initially gave his prearranged, fabricated story. After further ques-

tioning, he admitted his guilt in the murder and armed robbery.

The question of whether Reichl was arrested or "seized" prior to his admissions determines this appeal's outcome. A person is seized only when, by means of physical force or a show of authority, his freedom of movement is restrained. *United States v. Mendenhall*, 446 U.S. 544, 553 (1980). Only when such a restraint is imposed is there any foundation for invoking constitutional safeguards. The fourth amendment's purpose is to prevent arbitrary and oppressive interference by law enforcement officials with the privacy and personal security of individuals. *Id.* at 553–54.

As long as the person remains free to disregard the questions and walk away, there has been no intrusion upon that person's liberty or privacy. *Id.* at 554. The Supreme Court in *Mendenhall* and *Florida v. Royer*, —— U.S. ——, ——, 103 S. Ct. 1319, 1326 (1983) (White, J., concurring), adopted the objective test by holding that a person has been seized within the meaning of the fourth amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed he was not free to leave. *Mendenhall*, 446 U.S. at 554. Consequently, any subjective intention of the officers to detain Reichl is relevant only to the extent it was conveyed to him. Also, the question of whether Reichl's consent to accompany the officers to the station was voluntary or the product of duress or coercion is to be determined from the totality of all the circumstances. *Id.* at 557; *State v. Fillyaw*, 104 Wis. 2d 700, 719, 312 N.W.2d 795, 805 (1981).

The standard of review of a trial court's ruling of whether a person has been seized is somewhat uncertain.

The Court in *Mendenhall* treated a similar federal court ruling as a factual finding entitled to the appellate court's deference if supported by the evidence in the record. Wisconsin, however, appears to treat this issue as a question of law. In *State v. Doyle*, 96 Wis. 2d 272, 281–84, 291 N.W.2d 545, 549–52 (1981), and *Fillyaw*, 104 Wis. 2d at 711, 312 N.W.2d at 801, the Wisconsin Supreme Court, without specifically addressing the standard of review, decided the issue of whether a detention constituted an arrest without giving any deference to the trial court's ruling. Wisconsin courts have traditionally recognized the distinction between findings of historical facts and conclusions requiring application of constitutional principles. The latter are treated as questions of law without deference to the trial court's conclusions. Because the resolution of the issue in this case requires the application of constitutional principles to the underlying facts—what the officers said and did when taking Reichl to the police station—we consider the trial court's conclusion on the ultimate issue of whether Reichl was seized to be a question of law.

We conclude from the facts of this case that no seizure occurred because Reichl voluntarily accompanied the officers to the police station. He had no reason to believe he was in custody until after he was placed under arrest after admitting his participation in the crimes. Reichl was not told that he had to go to the police station. The police wore no uniforms, displayed no weapons, did not handcuff Reichl, and made no threats or a show of force. He was not restrained at any time. The police did not summon Reichl to the station, but instead initially approached his home and left a message for him to call. No officers were left to await his return. In fact, Reichl

and his companion elected to fabricate a story before calling the police. When the police arrived, they were already dressed for the outdoors and agreed to accompany the police to the station. They showed no reluctance, nor did they comment about being asked to go to the station. At no time prior to Reichl's admission was he told that he was under arrest. In addition, the questioning took place in an unlocked room where he was free to leave at any time. There is no evidence that Reichl wished to leave or was prevented from leaving. When informed of his constitutional rights, Reichl waived them.

Under the totality of the circumstances, the officers' conduct did not amount to an intrusion upon any federal or state constitutionally protected interest. The evidence indicates that Reichl was free to leave and that his consent to accompany the police to the station was voluntary and not the product of any express or implied duress or coercion.

*By the Court.*—Judgment affirmed.