VILLAGE OF MENOMONEE FALLS, Plaintiff-Respondent and Cross-Appellant,

v.

Paul KUNZ, Defendant-Appellant and Cross-Respondent.

Court of Appeals

No. 84-2453. Submitted on briefs May 9, 1985.—
Filed June 25, 1985.
On motion for publication October 24, 1985.
(Also reported in 376 N.W.2d 359.)

For the defendant-appellant and cross-respondent, the cause was submitted on the briefs of *Michael J. Gross,* of *Hippenmeyer, Reilly, Bode and Gross, S.C.,* of Waukesha.

For the plaintiff-respondent and cross-appellant, the cause was submitted on the briefs of *Stephen W. Hayes, Timothy G. Dugan,* and *Michael J. Morse* of *von Briesen & Redmond, S.C.* of Milwaukee.

Before Scott, C.J., Brown, P.J., and Nettesheim, J.

NETTESHEIM, J. The major issue on this appeal is whether the rule of *Miranda v. Arizona,* 384 U.S. 436, *reh'g denied,* 385 U.S. 890 (1966), applies to a routine traffic stop where the eventual prosecution is a civil forfeiture proceeding. We hold *Miranda* does not apply.

The appellant, Paul Kunz, was convicted of operating a motor vehicle while under the influence of an intoxicant pursuant to Village of Menomonee Falls ordinance no. 6.01, adopting sec. 346.63(1)(a), Stats. Kunz was acquitted of an accompanying charge of operating a motor vehicle with an illegal blood alcohol concentration

pursuant to ordinance no. 6.01, adopting sec. 346.63(1) (b). Kunz appeals from the judgment of conviction. The village cross-appeals from the judgment of acquittal. We affirm the judgment of the trial court *in toto*.

## APPEAL

On May 9, 1984, Kunz, together with friends, attended a Milwaukee Brewers baseball game. Certain testimony established that Kunz was drinking beer before and during the game. After leaving the ballpark, Kunz stopped at a friend's home where he consumed additional beer. Shortly after leaving the friend's home, Kunz's vehicle left the roadway and became stuck in a ditch. Kunz claimed he walked back to his friend's home and then consumed eight to ten additional beers. He also claimed he and his friend then returned to the scene of the accident where they eventually encountered the arresting officer, Christopher Campbell.

When Officer Campbell arrived at the scene, he observed two white males standing near the disabled vehicle. Upon approaching the individuals, the officer asked who the driver was. Kunz responded that he was. Officer Campbell then asked Kunz if he had been drinking. Kunz responded that he had not consumed any alcoholic beverages between the time the car went into the ditch and the officer's arrival. During this conversation, Officer Campbell detected a strong odor of intoxicants on Kunz's breath. The interior of the vehicle also emitted a strong odor of intoxicants. Officer Campbell then administered field sobriety tests to Kunz. Following the tests, Kunz was arrested and transported to the Menomonee Falls police department. Only after his arrival at the department was Kunz formally given his *Miranda* warnings. Kunz exercised his right to remain silent. He did, however, submit to a breathalyzer test which resulted in a blood alcohol reading of 0.20%

The trial court ruled that Kunz was not "in custody" within the meaning of *Miranda* when Officer Campbell conducted the on-the-scene questioning. We agree. We further conclude that *Miranda* does not apply to a civil forfeiture proceeding.

No Wisconsin case addresses the question of whether the *Miranda* warnings must be given incidental to a routine traffic stop.[1] Kunz claims the recent United States Supreme Court decision of *Berkemer v. McCarty*, 468 U.S. —, 82 L. Ed. 2d 317 (1984), fills this constitutional void. We disagree on two fronts.

First, the *Berkemer* Court expressly rejected the fixing of a bright-line rule at either end of the *Miranda* spectrum.

Either a rule that Miranda applies to all traffic stops or a rule that a suspect need not be advised of his rights until he is formally placed under arrest would provide a clearer, more easily administered line. *However, each of these two alternatives has drawbacks that make it unacceptable.* [Emphasis added.]

*Id.* at —, 82 L. Ed. 2d at 335.

Second, although stating in another portion of the opinion that *Miranda* extends to a routine traffic stop, *Berkemer* involved an offense which is a misdemeanor under Ohio law.[2] Such is not the situation in the case at

---

[1] *Anderson v. State*, 66 Wis. 2d 233, 223 N.W.2d 879 (1974), does not expressly govern on our facts. *Anderson* did not involve a routine traffic stop for a suspected traffic violation. Rather, *Anderson* involved a stop prompted by suspicious activity by the occupants of a vehicle independent of any suspected vehicle code violations.

[2] The respondent in *Berkemer v. McCarty*, 468 U.S. —, 82 L. Ed. 2d 317 (1984), was charged with:

operating a motor vehicle while under the influence of alcohol and/or drugs in violation of Ohio Rev Code Ann § 4511.19 (Supp 1983). Under Ohio law, that offense is a first-degree misdemeanor and is punishable by fine or imprisonment for up to 6

bar since Kunz was prosecuted in a civil forfeiture proceeding for operating under the influence.

Although forfeiture proceedings have certain aspects of criminal proceedings, *see State v. Peterson,* 104 Wis. 2d 616, 622, 312 N.W.2d 784, 787 (1981) ; *City of Madison v. Geier,* 27 Wis. 2d 687, 692, 135 N.W.2d 761, 763 (1965) ; *City of Milwaukee v. Wuky,* 26 Wis. 2d 555, 562, 133 N.W.2d 356, 360 (1965), forfeiture actions nonetheless remain essentially civil in nature. *See State v. Schulz,* 100 Wis. 2d 329, 331, 302 N.W.2d 59, 61 (Ct. App. 1981) ; *Village of Bayside v. Bruner,* 33 Wis. 2d 533, 535, 148 N.W.2d 5, 7 (1967) ; *City of Neenah v. Alsteen,* 30 Wis. 2d 596, 600, 142 N.W.2d 232, 235 (1966). Furthermore, sec. 939.12, Stats., provides: "A crime is conduct which is prohibited by state law and punishable by fine or imprisonment or both. *Conduct punishable only by a forfeiture is not a crime."* (Emphasis added.) *See also State v. Albright,* 98 Wis. 2d 663, 673, 298 N.W.2d 196, 202 (Ct. App. 1980).

The fifth amendment provides: "No person . . . shall be compelled in any *criminal* case to be a witness against himself . . . ." (Emphasis added.) It is well settled that this provision governs state as well as federal *Criminal* proceedings. *Malloy v. Hogan,* 378 U.S. 1, 8 (1964). The Wisconsin Supreme Court has observed that *Miranda* is an exclusionary rule reserved for *criminal* actions.[3] *See Village of Bayside* at 537–38 n. 2, 148 N.W.2d at 8.

---

months. § 2929.21 (1982). Incarceration for a minimum of 3 days is mandatory. § 4511.99 (Supp 1983).

*Id.* at ——, 82 L. Ed. 2d at 325.

[3] We do not read certain dicta language from *State v. Bunders,* 68 Wis. 2d 129, 134, 227 N.W.2d 727, 730 (1975), as precedent to the contrary. The issue before the supreme court in *Bunders* was whether the sixth amendment and *Miranda* applied to an implied consent proceeding. Since the request to submit to a chemical test does not involve testimonial utterances on the part of the driver, *Bunders* held that *Miranda* did not apply. We see

We stress that the issue here is not whether Kunz retains his fifth amendment rights in a civil forfeiture proceeding. He clearly does. *See Village of Bayside* at 537, 148 N.W.2d at 8; *City of Milwaukee v. Burns,* 225 Wis. 296, 299, 274 N.W. 273, 274 (1937). This privilege extends to all court proceedings, civil and criminal. *In re Grant,* 83 Wis. 2d 77, 81, 264 N.W.2d 587, 590 (1978). Rather, the issue here is whether *Miranda* applies where Kunz is not the subject of a criminal proceeding. For the reasons recited, we hold it does not.

Here, Kunz did not incriminate himself because he was not criminally prosecuted. *See Azzaro v. Stupar,* 169 N.W.2d 151 (Mich. Ct. App. 1969); *Terpstra v. Niagara Fire Insurance Co.,* 256 N.E.2d 536 (N.Y. 1970); *Levan v. Pennsylvania Game Commission,* 429 A.2d 1241 (Pa. Commw. Ct. 1981). Since, under Wisconsin law, a forfeiture action is civil in nature, the *Miranda* requirements do not apply.

Kunz further argues that the delivery of the *Miranda* warnings is required because the officer does not know at the outset of the encounter whether the ultimate prosecution will assume civil or criminal proportions. However, failure to give the requisite warnings will result in loss of the evidence if the ultimate prosecution is a criminal action and a *Miranda* situation is present. This should serve as sufficient impetus to the police authorities to deliver the *Miranda* warnings on a routine basis. As the United States Supreme Court noted in *Berkemer,* "[t]he police are already well accustomed to giving Miranda warnings to persons taken into custody." *Berkemer,* 468 U.S. at ——, 82 L. Ed. 2d at 331.

ourselves obligated to follow the rule in *Village of Bayside v. Bruner,* 33 Wis. 2d 533, 148 N.W.2d 5 (1967), that *Miranda* is an exclusionary rule reserved for criminal actions rather than dicta in *Bunders* suggesting that it is not.

In addition, we agree with the trial court that Kunz was not "in custody" within the meaning of *Miranda*. Under similar facts, *Berkemer* held that the roadside questioning of a suspect driver pursuant to a routine traffic stop was not "custodial interrogation" within the meaning of *Miranda*. While acknowledging that a traffic stop "significantly curtails the 'freedom of action' of the driver," *Berkemer*, 468 U.S. at ——, 82 L. Ed. 2d at 332, *Berkemer* concludes that a routine traffic stop is not the type of situation which invokes the concerns that prompted *Miranda* in the first instance.

Thus, we must decide whether a traffic stop exerts upon a detained person pressures that sufficiently impair his free exercise of his privilege against self-incrimination to require that he be warned of his constitutional rights.

*Id.* at ——, 82 L. Ed. 2d at 333.
Noting that a routine traffic stop usually entails only a temporary and brief detention and is essentially public in nature, the United States Supreme Court concluded that the routine traffic stop "is more analagous to a so-called 'Terry stop,' than to a formal arrest." (Citation omitted; footnote omitted.) *Id.* at ——, 82 L. Ed. 2d at 334.

Typically, this means that the officer may ask the detainee a moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the officer's suspicions. But the detainee is not obliged to respond. And, unless the detainee's answers provide the officer with probable cause to arrest him, he must then be released. The comparatively nonthreatening character of detentions of this sort explains the absence of any suggestion in our opinions that Terry stops are subject to the dictates of Miranda. *The similarly noncoercive aspect of ordinary traffic stops prompts us to hold that persons temporarily detained pursuant to such stops are not "in custody" for the purposes of Miranda.* [Emphasis added; footnotes omitted.]

*Id.* at ——, 82 L. Ed. 2d at 334-35.

We acknowledge, as did the United States Supreme Court in *Berkemer*, "that the police and lower courts will continue occasionally to have difficulty deciding exactly when a suspect has been taken into custody." Id. at ——, 82 L. Ed. 2d at 335. Either of two bright-line rules could be adopted: *Miranda* applies to all traffic stops or a suspect need not be advised of his rights until a formal arrest takes place. Each, however, presents significant drawbacks.

The first would substantially impede the enforcement of the nation's traffic laws—by compelling the police either to take the time to warn all detained motorists of their constitutional rights or to forgo use of self-incriminating statements made by those motorists—while doing little to protect citizens' Fifth Amendment rights. The second would enable the police to circumvent the constraints on custodial interrogations established by Miranda. [Footnote omitted.]

*Id.* at ——, 82 L. Ed. 2d at 335. We agree.

In the case before us, Officer Campbell's questioning was designed to determine Kunz's identity and to confirm or dispel a suspicion of intoxication. Officer Campbell's unarticulated opinion that he did not consider Kunz free to leave does not control the custodial question before us. Such subjective state of mind has no bearing on the question of whether a suspect was "in custody" at a particular time; the only relevant inquiry is how a reasonable man in the suspect's position would have understood his situation. *See Berkemer* at ——, 82 L. Ed. 2d at 336; *State v. Reichl,* 114 Wis. 2d 511, 515, 339 N.W.2d 127, 128-29 (Ct. App. 1983).

The *Berkemer* Court concluded that the facts there did not constitute a *Miranda*-type custody.

From aught that appears in the stipulation of facts, a single police officer asked respondent a modest number

of questions and requested him to perform a simple balancing test at a location visible to passing motorists. Treatment of this sort cannot fairly be characterized as the functional equivalent of formal arrest. [Footnote omitted.]

*Berkemer* at ——, 82 L. Ed. 2d at 336. Under similar facts in this case, we agree with the trial court's ruling that Kunz was not "in custody" within the meaning of *Miranda.*

Next, Kunz contends that the verdicts returned by the jury are inconsistent. He argues that the evidence did not permit a finding of not guilty on the blood alcohol charge and guilty on the operating under the influence charge. We disagree.

One possible and reasonable interpretation of the evidence supports both verdicts: the jury could have believed Kunz's contention that the bulk of his beer consumption occurred after the accident thereby supporting the not guilty verdict on the blood alcohol charge; on the other hand, the remaining evidence concerning Kunz's beer consumption prior to the accident could serve to support a finding that his ability to operate the vehicle was nonetheless materially impaired thereby rendering him under the influence. "There may be situations where a person with less than .10 percent blood alcohol concentration is 'under the influence' and a person with .10 percent or more blood alcohol concentration is not." *State v. Bohacheff,* 114 Wis. 2d 402, 415–16, 338 N.W.2d 466, 473 (1983). The verdicts, therefore, are not inconsistent.

## CROSS-APPEAL

The village asks that we address the cross-appeal issue only in the event we reverse Kunz's conviction. Since the conviction is affirmed, we need not address the cross-appeal issue.

*By the Court.*—Judgment and order affirmed.