STATE of Wisconsin, Plaintiff-Respondent,

v.

Bryon C. POUNDS, Defendant-Appellant.

Court of Appeals

No. 92–2035–CR. *Submitted on briefs February 26, 1993.—Decided April 14, 1993.*

(Also reported in 500 N.W.2d 373.)

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Judith M. Paulick* of Elm Grove.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *Gregory M. Posner-Weber*, assistant attorney general.

Before Nettesheim, P.J., Brown and Anderson, JJ.

BROWN, J. Bryon C. Pounds appeals from a judgment convicting him of possessing a short-barreled shotgun contrary to sec. 941.28(1)(c), Stats. He contends that the shotgun and his inculpatory statements should have been suppressed. We address two main issues. The first issue is whether Pounds was entitled to a *Miranda*[1] warning in the context of a *Terry*-type[2] investigatory stop, when he was handcuffed at gunpoint and transported to the scene of the questioning by a state patrolman. The second major issue is whether we may use a harmless error analysis in the context of a sec. 971.31(10), Stats., appeal. We conclude that Pounds was entitled to a *Miranda* warning under the circumstances of this case. Because we also conclude that Wisconsin law precludes a harmless error analysis when a defendant who has pled guilty appeals from an erroneous denial of a motion to suppress evidence, we reverse.

The background facts are essentially undisputed. On March 18, 1991, Officer Schmitt stopped Pounds

[1] *Miranda v. Arizona,* 384 U.S. 436 (1966).
[2] *Terry v. Ohio,* 392 U.S. 1 (1968).

317

and two other men because the car in which they were traveling did not match the license plate registration information. Upon questioning, Officer Schmitt discovered that Brown, the driver of the car, had a suspended driver's license. He also discovered that neither Pounds nor the other passenger possessed a valid operator's license. Officer Schmitt issued a citation to Brown and informed the men that the car would be towed because none of them could legally drive. He then told all three men that they were free to leave.

Pounds and Brown left the scene of the traffic stop and went to a nearby restaurant while Branon, the third man, stayed with Officer Schmitt and waited for the tow truck. While they waited, Officer Schmitt saw a short-barreled shotgun under the front seat of the car. He then handcuffed Branon and radioed State Trooper Llanas, asking him to go to the restaurant and bring Pounds and Brown back to the scene.

Trooper Llanas went to the restaurant, approached Brown and Pounds with his gun drawn, and ordered the two men to the ground. He frisked them, handcuffed them, and transported them in his car back to the scene of the original traffic stop. Officer Schmitt approached Brown and Pounds when they were in the back seat of the patrol car and asked them "what the deal was with the shotgun." Pounds then admitted that the gun was his. The trial court found that Officer Schmitt did not advise Pounds of his *Miranda* rights until after Pounds admitted ownership of the shotgun.

After Pounds admitted to owning the shotgun, Officer Schmitt took him to the police station and then to the Waukesha County Jail. Pounds made several more incriminating statements before he reached the jail. He claims that he did not receive *Miranda* warn-

318

ings prior to any of these statements. However, the trial court found that only Pounds' first statement while he was in the patrol car was given without *Miranda* warnings.

Pounds moved to suppress all of his statements on the grounds that "the stop was made without probable cause," the "arrest was illegal and was made without probable cause to believe he had committed a crime," and "any such statements were obtained in violation of rights guaranteed to him" by the Wisconsin and United States Constitutions. At the suppression hearing, defense counsel stated, "I'm going to address the stop motion first. It's — and to make it clear, I'm referring to the stop that occurred at Marc's Big Boy. I'm not contending that there was anything wrong with stopping the vehicle. . . ." Counsel then contended that the stop at the restaurant was actually an arrest without probable cause, because a reasonable person would not have believed that he or she was free to leave after being ordered to the ground at gunpoint, frisked, and handcuffed.

The defense also argued that Pounds should have been advised of his *Miranda* rights after being detained by Trooper Llanas. Because no one read Pounds his rights, counsel contended that the incriminating statements were not a result of a voluntary waiver of those rights. Pounds also contended that his statements after the officer read him his *Miranda* warnings were tainted by the officers' initial failure to advise him of his rights. The trial court rejected each of Pounds' arguments and denied the motion to suppress in its entirety, stating:

> Because the Court believes that the police officers were conducting a <u>Terry</u>-type stop and had merely

319

detained this Defendant as well as his companions and that the specific question as to who was the owner of the shotgun was merely an on-the-scene question to determine what further action the police would take, the Court believes that the Defendant was only arrested after the incriminating statement of ownership was made by the Defendant. Since the Defendant was under arrest at that particular point and since there was full compliance with Miranda thereafter that the Defendant then made incriminating responses to the police, all of his statements, including his statement regarding ownership of the shotgun, will be admitted in the State's case in chief.

Pounds subsequently pled guilty and now appeals his conviction pursuant to sec. 971.31(10), Stats.

First, Pounds argues on appeal that Officer Schmitt's initial stop of the car violated the principles set forth in *Terry v. Ohio,* 392 U.S. 1 (1968). This argument was expressly waived by his counsel in the trial court, and we will not consider it. *See Wirth v. Ehly,* 93 Wis. 2d 433, 443, 287 N.W.2d 140, 145 (1980).

We must next determine whether Officer Schmitt violated Pounds' constitutional rights by failing to advise Pounds of his *Miranda* rights prior to asking "what the deal was with the shotgun." The deciding factor is whether Pounds was "in custody" as contemplated by *Miranda* when he made his first inculpatory statement admitting ownership of the gun. This is a question of law that we review without deference to the trial court's determination. *State v. Swanson,* 164 Wis. 2d 437, 445, 475 N.W.2d 148, 152 (1991).

"[T]he prosecution may not use statements, whether exculpatory or inculpatory, stemming from

custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination."[3] *Miranda v. Arizona,* 384 U.S. 436, 444 (1966). "Custodial interrogation" means "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Id.*

The protections delineated in *Miranda* come into play as soon as a suspect's freedom is curtailed "to the degree associated with formal arrest." *Berkemer v. McCarty,* 468 U.S. 420, 440 (1984), *quoted in Swanson,* 164 Wis. 2d at 449, 475 N.W.2d at 153. The test is "whether a reasonable person in the defendant's position would have considered himself or herself to be in custody, given the degree of restraint under the circumstances." *Swanson,* 164 Wis. 2d at 446–47, 475 N.W.2d at 152. The totality of the circumstances must be considered when determining whether a suspect was "in custody" for the purpose of triggering *Miranda* protections. *California v. Beheler,* 463 U.S. 1121, 1125 (1983).

We have no difficulty in deciding that Pounds was subjected to a degree of restraint sufficient to require *Miranda's* protections. Pounds was initially told that he was free to leave the scene of what appeared to be a

---

[3] These safeguards include advising the suspect that he has a right to remain silent, that any statement he makes may be used against him in court, and that he has a right to the presence of an attorney, either retained or appointed. *Miranda,* 384 U.S. at 444. The suspect must also be advised that these rights are continuing and may be asserted at any time during a custodial interrogation. *See id.* at 444–45.

routine traffic stop. However, a short time later a state trooper located him and ordered him to the floor at gunpoint. The trooper frisked and handcuffed Pounds and Brown and transported them in a state patrol car back to the scene of the traffic stop. A reasonable person in Pounds' position would not have believed that he was free to leave the patrol car under these circumstances. This is the only relevant inquiry. *See Village of Menomonee Falls v. Kunz,* 126 Wis. 2d 143, 150, 376 N.W.2d 359, 363 (Ct. App. 1985).

We do not quarrel with the state's assertion that the officers involved engaged in good investigative police work. Trooper Llanas had the right to protect himself by ordering Brown and Pounds to the ground at gunpoint. He had the right to frisk the men. He had the right to handcuff them, and to transport them in his patrol car back to the scene of the initial traffic stop.

The quality of the officers' work and the validity of their techniques are not the issues. The issue is whether their techniques gave rise to a custodial situation requiring *Miranda*'s protections. We disagree with the trial court's implicit assumption that *Miranda* is never implicated in the context of a *Terry* stop. The point at which custody begins is not subject to a bright-line rule; thus, a rule requiring *Miranda* warnings only after a formal arrest occurs would be unacceptable. *Kunz,* 126 Wis. 2d at 146, 376 N.W.2d at 361. In this situation, the totality of the circumstances leads to the conclusion that Pounds was entitled to be advised of his rights prior to being asked any questions by the police. Pounds was clearly "in custody," and the trial court erred by refusing to suppress his initial admission that he owned the shotgun.

Our decision that *Miranda* warnings should have been given does not resolve this case. The trial court

found that Officer Schmitt read Pounds his rights immediately after Pounds admitted ownership of the shotgun. It also found that Pounds made several inculpatory statements after being advised of his rights.

As to these findings, Pounds makes the blanket contention that all of his statements were involuntarily given. He made no argument before the trial court and makes no argument here that his subsequent statements were inadmissible because they were the "fruit of the poisonous tree." *See State v. Schlise,* 86 Wis. 2d 26, 45, 271 N.W.2d 619, 628 (1978). That would require an evidentiary determination of whether the subsequent statements were preceded by intervening events breaking the causal connection between the illegal government procedure and the suspect's willingness to talk. *See State v. Smith,* 131 Wis. 2d 220, 241, 388 N.W.2d 601, 610 (1986). Because Pounds did not raise the issue or request fact-finding relevant to the issue, we will not indulge in speculation about whether the subsequent statements were "fruit of the poisonous tree." Rather, we hold that the trial court's findings regarding the voluntariness of the subsequent statements are not clearly erroneous and we will not upset them on appeal. *See* sec. 805.17(2), Stats.

The state contends that, given these subsequent statements, the *Miranda* error which occurred with respect to the initial statement is harmless. The question now becomes whether harmless error analysis is applicable when a defendant pleads guilty and then appeals the denial of a suppression motion pursuant to sec. 971.31(10), Stats. The state contends that it "is simply asking this court to apply the traditional harmless error rule already in place—a rule mandated in sec. 805.18(2), Stats., which forbids reversal of a judg-

ment of conviction for improper admission of evidence unless it appears that the substantial rights of the party seeking relief were affected." The state argues that "[a]ny one of Pounds's admissions would have established the possession element of the charged crime and would have provided a factual basis for the trial court to accept his guilty plea and find him guilty."

However, we are bound by *State v. Monahan,* 76 Wis. 2d 387, 251 N.W.2d 421 (1977), in which our supreme court stated: "The state suggests that a harmless error rule be formulated to apply where a defendant is appealing pursuant to sec. 971.31(10), Stats. . . . We have considered this argument, but we do not adopt such a rule." *Monahan,* 76 Wis. 2d at 401, 251 N.W.2d at 426. The state attempts to distinguish *Monahan* by asserting that the court's rejection of the harmless error analysis was based upon different arguments than those being made in this case. That may be true; however, we are restricted to looking at the language of the opinion and not at the arguments presented to the court. The statement in *Monahan* is a broad, unequivocal refusal to employ harmless error analysis when a defendant appeals pursuant to sec. 971.31(10), Stats. We are bound to follow its mandate. *See State v. Lossman,* 118 Wis. 2d 526, 533, 348 N.W.2d 159, 163 (1984).

We point out that although the *Monahan* prohibition on use of the harmless error analysis in sec. 971.31(10), Stats., cases is clear, the underlying reasoning behind *Monahan*'s absolute statement was not explicated by that court. However, while the *Monahan* court may not have explicated the reasoning for its decision, two federal circuit courts have explained *Monahan*'s holding. The First Circuit used *Monahan* as authority for holding that "a court has no right to

decide for a defendant that his decision (in those instances, to plead guilty) would have been the same had the evidence the court considers harmless not been present." *United States v. Weber,* 668 F.2d 552, 562 (1st Cir. 1981), *cert. denied,* 457 U.S. 1105 (1982).

The Seventh Circuit also addressed the *Monahan* holding in *Jones v. State,* 562 F.2d 440 (7th Cir. 1977). There the Wisconsin Attorney General asserted, as the attorney general does here, that a harmless error rule would be proper in sec. 971.31(10), Stats., appeals. The state urged a "case by case" approach. Alternatively, it suggested that harmless error could be found "where evidence is admissible against a defendant which is not qualitatively different from that which has been suppressed on appeal." *Jones,* 562 F.2d at 445.

The court rejected both approaches, reasoning that "only the defendant is in a position to evaluate 'the impact of a particular erroneous refusal to suppress evidence.' " *Id.* (quoting *People v. Hill,* 528 P.2d 1, 29 (Cal. 1974)). More particularly, the court wrote:

> The Wisconsin statute encourages guilty pleas. In doing so it entails the waiver of some very fundamental entitlements, including the right to a jury and the right to confront hostile witnesses at trial. The objective of the statute is obtained by guaranteeing to the defendant that he will have a full trial in the event that after appeal the state's evidence is weaker than it appeared at the time of the trial court's evidentiary rulings. The statute would be a "trap for the unwary" if it deprived a defendant of these rights even after he prevails on some of his evidentiary objections.

*Jones,* 562 F.2d at 445-46 (citation omitted). The court also offered its interpretation of *Monahan* by writing that "[i]t is therefore clear that the harmless error

interpretation rejected by the Wisconsin Supreme Court in fact should apply to all cases in which an appellate court is asked by the state to gauge the impact of the wrongfully admitted evidence upon a defendant's guilty plea." *Jones,* 562 F.2d at 446.

In the face of *Monahan, Jones* and *Weber,* it would be contrary to present law to follow a harmless error analysis in sec. 971.31(10), Stats., situations. Because we are primarily an error correcting court, we leave it to the supreme court to decide whether to revisit this issue and discuss whether the reasoning used in *Jones* and *Weber* accurately reflects the rationale for the holding in *Monahan. See State ex rel. Swan v. Elections Board,* 133 Wis. 2d 87, 93-94, 394 N.W.2d 732, 735 (1986).

We hold that Pounds' initial admission that he owned the shotgun should have been suppressed because he was in custody and should have been given *Miranda* warnings prior to answering any questions. We also hold that Pounds' statements after *Miranda* warnings were given are admissible. Finally, because this state does not recognize harmless error in sec. 971.31(10), Stats., appeals, we are bound to reverse the judgment and remand with directions to allow Pounds to withdraw his plea.

*By the Court.*—Judgment reversed and cause remanded with directions.