KLOPPENBURG, J.
¶ 1 Brian Frazier appeals the judgment of conviction for one count of physical abuse of a child and one count of first-degree sexual assault of a child under thirteen by sexual contact, and the circuit court's order denying his postconviction motion requesting a Machner[1] hearing. Frazier argues that his trial counsel provided ineffective assistance by failing to move to suppress the confession that he contends police obtained from him during an interrogation in violation of his Miranda[2] rights under the Fifth Amendment, and that postconviction counsel was ineffective for failing to raise ineffective assistance of trial counsel on that ground. The underlying issue on appeal is whether Frazier was in custody at the time of his confession, which created a basis for seeking suppression of his confession. We conclude that Frazier was in custody at the time of the confession and, because police had not read him the Miranda warnings, a motion to suppress his confession should have been successful. It follows that Frazier is entitled to a Machner hearing, at which Frazier will have an opportunity to attempt to prove the prejudice prong of ineffective assistance of counsel relative to his entry of a plea.
BACKGROUND
¶ 2 Frazier's nephew reported to a social worker that Frazier had sexually assaulted him and, on another occasion, had slapped him in the face. Following the report, Lieutenant Dennis Weiner contacted Frazier and asked Frazier if he would be willing to speak with him at the police station. Frazier agreed and drove himself to the police station for questioning.
¶ 3 Weiner alone interrogated Frazier for approximately forty minutes. About halfway through, Frazier made incriminating statements, which we will refer to as the confession. At no point did Weiner inform Frazier of his Miranda rights.
¶ 4 The State charged Frazier with first-degree sexual assault of a child by sexual intercourse, physical abuse of a child, and first-degree sexual assault of a child by sexual contact. Frazier was appointed trial counsel by the State Public Defender. Without filing any motion to suppress evidence, Frazier pleaded no contest to, and was convicted of, first-degree sexual assault of a child under thirteen by sexual contact and physical abuse of a child.
¶ 5 Frazier pursued postconviction relief and was appointed new counsel. Postconviction counsel moved to withdraw Frazier's plea on the ground that Frazier did not understand the definition of "sexual contact." The circuit court denied the motion. Postconviction counsel then filed a no-merit notice of appeal and report, but moved to withdraw the no-merit report after discovering the potential Miranda -based claim of ineffective assistance of counsel that we address in this appeal. This court dismissed the no-merit appeal and allowed Frazier to pursue the Miranda claim in the context of ineffective assistance of counsel.
¶ 6 Frazier was then appointed his current counsel to pursue this claim. Current counsel filed a motion to withdraw Frazier's plea based on the ground that his trial counsel was ineffective for failing to move to suppress his confession, which he contends was obtained in violation of his Miranda rights, and that postconviction counsel was ineffective for failing to raise ineffective assistance of trial counsel on that ground. In support of his motion Frazier submitted an affidavit in which he averred that, "Had I been correctly informed that my confession could have been suppressed, then I would not have accepted the plea agreement." The circuit court denied Frazier's motion without holding a Machner hearing, concluding that Frazier was not in custody during the interrogation for purposes of Miranda and, therefore, Frazier's prior trial and postconviction counsel were not ineffective.
DISCUSSION
¶ 7 In order to receive a hearing on a postconviction motion, a defendant must allege sufficient specific facts that, if proven true, would entitle the defendant to relief. State v. Allen , 2004 WI 106, ¶ 14, 274 Wis. 2d 568, 682 N.W.2d 433. The sufficiency of a postconviction motion to entitle a defendant to a hearing is a question of law that we review de novo. Id. , ¶ 9; State v. Tucker , 2012 WI App 67, ¶ 6, 342 Wis. 2d 224, 816 N.W.2d 325.
¶ 8 To withdraw a guilty or no contest plea after sentencing, "a defendant must show by clear and convincing evidence that a refusal to allow withdrawal of the plea would result in manifest injustice." State v. Dillard , 2014 WI 123, ¶ 83, 358 Wis. 2d 543, 859 N.W.2d 44. When ineffective assistance of trial counsel is the alleged manifest injustice, the defendant must prove that counsel's performance was deficient and prejudicial. Strickland v. Washington , 466 U.S. 668, 687 (1984). To prove deficient performance, a defendant must show that, under all of the circumstances, counsel's specific acts or omissions fell "outside the wide range of professionally competent assistance." Id. at 690. To prove prejudice, a defendant must demonstrate that "there is a reasonable probability that, but for counsel's errors, he would not have [pled] guilty and would have insisted on going to trial." Hill v. Lockhart , 474 U.S. 52, 59 (1985).
¶ 9 The State makes no argument contrary to any of the following. If we determine that a motion to suppress the confession, had one been pursued in the circuit court, should have been granted, then: (1) Frazier's trial counsel was deficient for failing to move to suppress; (2) postconviction counsel was deficient for failing to challenge trial counsel's performance as ineffective; and (3) Frazier has alleged facts that, if true, would entitle him to a Machner hearing on the issue of prejudice, and the record does not conclusively demonstrate otherwise. Thus, this appeal turns on whether a motion to suppress Frazier's confession should have been granted, and the sole dispute as to that issue is whether Frazier was in custody at the time of his confession. If so, his confession was obtained in violation of his constitutional rights.
¶ 10 We proceed first to state the applicable standard of review and the governing law. We next relate details of Weiner's interrogation of Frazier and apply the law to the facts of this case. We then address and reject the State's arguments to the contrary. We conclude our discussion with an analysis of the facts here in light of our supreme court's recent opinion in State v. Bartelt , 2018 WI 16, 379 Wis. 2d 588, 906 N.W.2d 684, and explain how the court's determination of when custody began in that case supports our determination of when custody began here.
A. Standard of Review and Governing Law
¶ 11 To reduce the risk that a person is unconstitutionally "compelled in any criminal case to be a witness against himself," U.S. CONST. art. V, law enforcement may not subject a person to a custodial interrogation until that person is given the following warnings: that he or she has the right to remain silent, that any statement made can be used against him or her, and "that he [or she] has a right to the presence of an attorney, either retained or appointed." State v.Lonkoski , 2013 WI 30, ¶ 23, 346 Wis. 2d 523, 828 N.W.2d 552 (quoting Miranda v. Arizona , 384 U.S. 436, 444 (1966) ).[3] If a person is subjected to custodial interrogation without having received the Miranda warnings and makes incriminating statements, those statements "cannot be used by the prosecution" and must be suppressed. Lonkoski , 346 Wis. 2d 523, ¶ 23. However, "[c]ustody is a necessary prerequisite to Miranda protections"; incriminating statements made by a person who is not in the custody of law enforcement need not be suppressed. Lonkoski , 346 Wis. 2d 523, ¶¶ 23-24.
¶ 12 "A determination of when custody begins presents a question of constitutional fact that we review under a two-part standard." Bartelt , 379 Wis. 2d 588, ¶ 25. First, we generally accept the circuit court's findings of historical fact unless they are clearly erroneous. Id . Second, we review de novo whether those facts satisfy the legal standard for "custody," which is a question of law. Id . When the only evidence on a factual question is reflected in a video recording, the court of appeals may be in the same position as the circuit court to determine a question of law based on what we perceive to be plainly reflected in the recording. See State v. Jimmie R.R. , 2000 WI App 5, ¶ 39, 232 Wis. 2d 138, 606 N.W.2d 196 (1999).
¶ 13 It is well established that an individual is in the custody of law enforcement within the meaning of Miranda when "a reasonable person would not feel free to terminate the interview and leave the scene." Bartelt , 379 Wis. 2d 588, ¶ 31 (quoting State v. Martin , 2012 WI 96, ¶ 33, 343 Wis. 2d 278, 816 N.W.2d 270 ). In making this determination, we consider the totality of the circumstances surrounding the interrogation, and "[t]he inquiry is 'whether there is a formal arrest or restraint on freedom of movement of a degree associated with a formal arrest.' " Id . (quoted source omitted). The "determination of custody depends on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned." Id ., ¶ 33 (quoting Stansbury v. California , 511 U.S. 318, 323 (1994) ). Factors relevant to the totality of the circumstances inquiry may include the degree of restraint used by law enforcement, what has been communicated by police officers, and the purpose, place, and length of the interrogation. Id ., ¶ 32; see also U.S. v. Ambrose , 668 F.3d 943, 956 (7th Cir. 2012) (listing additional factors and explaining that the list is not exhaustive).
B. The Circumstances of the Interrogation
¶ 14 As stated, Weiner contacted Frazier and asked Frazier if he would be willing to speak with Weiner at the police station. Frazier agreed and drove himself to the police station for questioning. When Frazier arrived at the police station, he was led to a small interview room containing a small table and two chairs on either end of the table. The video recording submitted to this court reveals that Weiner closed the door to the interview room. Frazier was seated at the end of the table closest to the door and with his side to the door.
¶ 15 At the outset of the interview, Weiner told Frazier three times that Frazier was not under arrest and once that Frazier did not have to talk to him. Frazier stated that he understood. Weiner did not frisk or handcuff Frazier. At the outset and throughout the interrogation, Weiner's tone was conversational and calm, and Weiner remained seated, taking notes on a pad of paper as Frazier spoke.
¶ 16 Weiner began the substantive part of the interrogation by informing Frazier that Weiner wanted to talk about "some allegation" about how Frazier had interacted with his niece and nephews. Weiner asked Frazier about his living arrangements and his day-to-day care of his niece and nephews.
¶ 17 Weiner informed Frazier that Frazier's nephew, R.M.S., reported that Frazier had slapped him in the face for stealing a piece of pizza. Frazier became agitated, clutched his head, and mumbled inaudibly. Weiner said, "We're not done yet either."
¶ 18 Weiner informed Frazier that R.M.S. reported that Frazier had sexually assaulted him, and Weiner said, "I believe [R.M.S.] to be honest and I think Human Services does as well. That's why we're here." Frazier responded, "I honestly do not believe this." Weiner said, "It's not really going to make any difference in what's going on here tonight." Frazier asked, "You believe that I did it?" Weiner responded, "I believe his statement and his statement was that it was you." Frazier, again, clutched his head and mumbled inaudibly.
¶ 19 Weiner closed the folder that held his pad of paper and said, "Just chill and gather your thoughts for a couple minutes, all right. I'll be right back with you." Weiner stood up, walked over to the door and opened it, without using a key of any kind. As Weiner stood in the doorway, with the door open, Frazier said, "I don't believe this," and asked, "Is it okay if I-no, can I make a call?" Weiner, still standing in the doorway and looking down at Frazier, responded in a commanding manner, "No, I don't want you calling anybody until we're done talking, okay.... We got business to take care of first, okay." Weiner then firmly closed the door to the interview room.
¶ 20 After approximately two minutes, Weiner opened the door, stepped into the room, closed the door, and resumed questioning Frazier. This included reiterating that "anything you tell me right now is not ... going to change what's probably going to happen tonight or how we're going to end this." Frazier then confessed to the allegation of sexual assault.
C. Whether Frazier was in Custody at the Time of his Confession
¶ 21 Frazier does not dispute that the interrogation began as non-custodial. Indeed, the following facts weigh against a determination of custody at the outset of the interrogation. Frazier agreed to meet with Weiner and drove himself to the police station; once there, Weiner did not frisk or handcuff Frazier and told Frazier that he was not under arrest and that he did not have to talk to Weiner. See Oregon v. Mathiason , 429 U.S. 492, 492, 493, 495 (1977) (holding that a defendant was not in the custody of law enforcement when he voluntarily drove himself to the police station, was told he was not under arrest, confessed to a burglary within five minutes of arriving, and subsequently left the police station after confessing); Bartelt , 379 Wis. 2d 588, ¶ 37 (lack of physical restraint may indicate that an individual is not in the custody of law enforcement). However, an interrogation may begin as non-custodial but, as it unfolds, become custodial. See Bartelt, 379 Wis. 2d 588, ¶ 52 (considering whether a confession transforms a non-custodial interrogation into a custodial interrogation); State v. Pounds , 176 Wis. 2d 315, 321-22, 500 N.W.2d 373 (Ct. App. 1993) (holding that the defendant was in custody for Miranda purposes even though he "was initially told that he was free to leave"). Here, the cumulative effect of the following facts, taken together, tipped the scale in favor of custody by the time Frazier confessed.
¶ 22 The scale first began to move when, after Frazier became visibly agitated and started to mumble inaudibly, Weiner asserted that "We're not done yet either." This statement was a show of Weiner's authority and could have been understood as being inconsistent with Weiner's earlier statement that Frazier did not have to talk to Weiner. See Bartelt , 379 Wis. 2d 588, ¶ 38. However, this was a relatively mild show of authority, and would not tip the scales by itself.
¶ 23 The interaction became more pointed shortly thereafter, when Weiner clearly manifested his belief that Frazier was culpable. He told Frazier, "[i]t's not really going to make any difference in what's going on here tonight"[4] and "I believe [R.M.S.'s] statement and his statement was that it was you." The Supreme Court has stated that
an officer's views concerning the nature of an interrogation, or beliefs concerning the potential culpability of the individual being questioned, may be one among many factors that bear upon the assessment whether that individual was in custody, but only if the officer's views or beliefs were somehow manifested to the individual under interrogation and would have affected how a reasonable person in that position would perceive his or her freedom to leave.
Stansbury v. California , 511 U.S. 318, 325 (1994) ; see also State v. Mosher , 221 Wis. 2d 203, 216-217, 584 N.W.2d 553 (Ct. App. 1998). Still, however, if this is all that had happened, we would not consider Frazier to be in custody. We learn from Bartelt that even a confession to a serious offense may not be sufficient to tip the scales into a custodial status. Bartelt , 379 Wis. 2d 588, ¶¶ 45, 48.
¶ 24 The tipping point occurred when Weiner told Frazier in a commanding manner, "I don't want you calling anybody until we're done talking, okay" and then firmly closed the door to the interview room. It is significant that this occurred at the moment when Weiner had decided to interrupt the flow of questioning and leave Frazier by himself in the interview room. Weiner set a distinctly different tone from much of what had occurred to that point in the interrogation by commanding that Frazier not use his phone and stay in the room until Weiner returned.
¶ 25 It is true that the phrase "[j]ust chill and gather your thoughts" in part conveyed the idea that Frazier-who, as we have noted, had exhibited frequent signs of distress to that point in the interrogation-was supposed to sit back and relax while he waited for Weiner to return. However, taken in context, this also conveyed that Frazier was being told to remain in the room, particularly when accompanied by the firm closing of the door, and that he was at that point under the control of law enforcement.
¶ 26 In summary, we conclude that a reasonable person told he or she could not use his or her phone, not only "until we're done talking," but also while the officer was away, in combination with the other circumstances previously described, would also conclude that he or she was not free to leave.
¶ 27 To find for the State we would have to conclude that a reasonable person who was told the following by police would feel free to terminate the interrogation and leave: the officer believed that the person was culpable of a serious offense; the person was to "[j]ust chill" in the interview room with the door closed until the police returned; and the person was forbidden from using his or her cell phone until the police were done with the interrogation. We conclude the opposite. One way of putting this is that a reasonable person under these circumstances would not feel free to open the door the officer had just firmly closed, walk out, and make the phone call that the officer told the person he or she could not make while sitting in the room, after the person was effectively told to stay. We conclude that no reasonable person in Frazier's position would have thought this, and we reject the State's arguments to the contrary.
¶ 28 The State argues generally that "the totality of the circumstances show that the circuit court was correct that Frazier was not in custody when he confessed," relying heavily on facts that, as we described above, weigh against a determination of custody at the outset of the interrogation.[5] However, as also discussed, other factors changed the custody calculus as the interrogation of Frazier progressed.
¶ 29 More specifically, the State argues that the interrogation was non-custodial, emphasizing that Weiner's tone remained non-aggressive and conversational, and that Weiner never explicitly told Frazier that he was or would be under arrest, but only that he was, in the State's words, "a prime target." We agree with the State that the tone of an interrogation is relevant to the custody inquiry, see Bartelt , 379 Wis. 2d 588, ¶ 48, and, here, Weiner did not raise his voice or use vulgar language. However, regardless of the soft and conversational tone Weiner used during the interrogation until just before he left the room, the commanding manner that Weiner used to forbid Frazier from using his cell phone, immediately followed by the firm shutting of the interview room door, tipped the scale in favor of custody. It is the entire sequence of events-Weiner's statements indicating that Frazier was culpable and that nothing Frazier said would change "how we're going to end this" "tonight," plus the directive to "[j]ust chill" behind the firmly closed door while the officer stepped out, and not to use the phone "until we're done talking,"-which in its totality implies that Frazier's freedom of movement was restrained to a significant degree.
¶ 30 The State makes several related arguments regarding the weight that can be placed on Weiner's directive prohibiting Frazier from using his cell phone. The State contends that "police do not have to acquiesce to a suspect's every request to prevent the questioning from becoming a custodial interrogation." The State also argues that when Frazier asked if he could make a phone call, "Weiner did not physically prevent Frazier from doing so, nor did he make any statement implying that Frazier was not free to end the interview and call whomever he wanted" and "[a] reasonable person would recognize that he or she could have simply told Weiner, 'okay, we're done talking,' ended the interview, and made a phone call." We disagree.
¶ 31 First, Weiner did not need to "physically prevent Frazier from" calling, because Frazier followed Weiner's directive and did not attempt to call or leave the room. Nor does the State point to any qualification in Weiner's directive that would have reasonably conveyed to Frazier that, despite that directive, Frazier was, in the State's words, "free to end the interview and call whomever he wanted."
¶ 32 Second, the State ignores the context surrounding both the request and the denial. If, for example, Frazier had asked to make a call during the course of the questioning and Weiner had responded, "No, let's just finish up here," that would have been a different circumstance. In that scenario, Frazier's request would have interrupted the flow of the questioning. In that hypothetical circumstance, it would be unreasonable for Frazier to think that Weiner's desire to complete the questioning without the interruption and distraction of a phone call was an indication that Frazier was not free to leave. In contrast, here Weiner told Frazier that he was forbidden from making a phone call during a break in the questioning, a break initiated by Weiner, as Weiner was leaving the room and then firmly closed the door behind him. This unmistakably indicated to a reasonable person in Frazier's situation that he was under the control of law enforcement.
¶ 33 The recent decision Bartelt provides a useful comparison. In Bartelt , police officers sought to question Bartelt about a violent assault of a woman in a park. 379 Wis. 2d 588, ¶¶ 5-6. Bartelt voluntarily went to the police station and, once there, the police engaged in a non-custodial interrogation. Id. , ¶ 8. At one point during the interview, Bartelt's cell phone rang, the police told Bartelt he was free to answer the call, but Bartelt declined to answer. Id. , ¶ 17. After a period of questioning, Bartelt confessed to the assault of the woman in the park. Id. , ¶ 15. Bartelt then asked to speak to an attorney and police "suspended the interview, took Bartelt's cell phone, and left the room." Id. , ¶ 16. Police formally arrested Bartelt when they returned to the room. Id. The next day, while Bartelt was still in custody, police sought to speak with Bartelt about a separate incident involving the murder of his ex-girlfriend. Id. , ¶¶ 5, 18. The issue before our supreme court was whether Bartelt's status changed from non-custodial to custodial when he confessed to the assault, thereby prohibiting police from attempting to interview Bartelt the following day about the murder without an attorney present. Id. , ¶¶ 2-3, 21, 23, 52.
¶ 34 Our supreme court held that, based on all the facts in that case, Bartelt's confession to the violent assault did not transform the non-custodial interrogation into a custodial interrogation, reasoning that the circumstances of the interrogation had not changed, in that "both before and after Bartelt's confession, [the officers] spoke in a conversational tone," and "the discussion otherwise was not aggressive or confrontational." Id. , ¶¶ 45, 48. However, pertinent here, the court concluded, "Bartelt was not in custody until Detectives Clausing and Walsh took his cell phone, approximately ten minutes after his confession, and instructed him to remain in the interview room." Id. , ¶ 54. These circumstances are similar to those here, where Weiner, with a newly commanding tone, prohibited Frazier from using his cell phone, told him to "[j]ust chill," and then firmly closed the door behind him. It was at that point that Frazier was in custody of law enforcement.
¶ 35 In sum, because Frazier was in custody when he confessed and he had not been read his Miranda rights, the motion to suppress his confession should have been granted.
CONCLUSION
¶ 36 For the reasons stated, we conclude that Frazier has alleged sufficient facts that, if proven, would entitle him to relief and, therefore, he is entitled to the Machner hearing that he seeks in order to give him an opportunity to attempt to prove the prejudice prong of ineffective assistance of counsel relative to his entry of a plea. Accordingly, we reverse and remand for further proceedings.
By the Court. -Judgment and order reversed and cause remanded.
Not recommended for publication in the official reports.

State v. Machner , 92 Wis. 2d 797, 804, 285 N.W.2d 905 (Ct. App. 1979).

Miranda v. Arizona , 384 U.S. 436 (1966).

"Wisconsin courts interpret Article I, Section 8 of the Wisconsin Constitution consistent with the Supreme Court's interpretation of the Fifth Amendment." State v. Bartelt , 2018 WI 16, ¶ 30, 379 Wis. 2d 588, 906 N.W.2d 684.

Frazier argues that this statement, and Weiner's later statement, "anything you tell me right now is not ... going to change what's probably going to happen tonight or how we're going to end this" indicate that, in Frazier's words, "it was quite obvious how he was 'going to end this': by arresting Frazier." This is certainly one reasonable interpretation. However, it could also be reasonably interpreted to mean that what was "not ... going to change" was the non-custodial status of the interrogation, and that Frazier would continue to be able to leave at anytime. Because these statements are ambiguous, and because the State does not develop any argument in its briefing focusing on these statements, we do not consider them as an independent factor for or against custody. Rather, we consider these statements together with Weiner's other statements indicating that he believed Frazier to be guilty.

Additionally, the State directs our attention to the fact that "Frazier was provided with water and an opportunity to use the restroom." We observe that Frazier was offered water and an opportunity to use the restroom only after he made the confession, and these offers are therefore irrelevant when determining whether he was in custody at the time of the confession.