STATE of Wisconsin, Plaintiff-Respondent,

v.

Dale GRUEN, Defendant-Appellant.†

Court of Appeals

*No. 96–2588–CR. Oral argument March 16, 1998.—Decided April 14, 1998.*

(Also reported in 582 N.W.2d 728.)

†Petition to review denied.

582

On behalf of the defendant-appellant, the cause was submitted on the brief of *Scott F. Anderson*, of Milwaukee, with oral argument by *Scott F. Anderson*.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *E. Michael McCann*, district attorney, and *Robert D. Donohoo*, assistant district attorney, with oral argument by *Robert D. Donohoo*.

Before Wedemeyer, P.J., Fine and Curley, JJ.

CURLEY, J.   Dale Gruen appeals from a judgment of conviction entered after a jury convicted him of operating a motor vehicle under the influence of an intoxicant, contrary to §§ 346.63(1)(a) & 346.65(2), STATS. Gruen claims the trial court erred when it denied his motion to suppress statements made to a Wauwatosa police officer. He argues that the initial *Terry* stop conducted by a Milwaukee police officer had ended when he made the inculpatory statements because the questioning by the second officer was done in a custodial setting designed to elicit incriminating evidence.

Because the actions of the Wauwatosa officer, called to the scene by the Milwaukee police, were those of an officer still acting in an investigatory stage, his brief questioning of Gruen following the questioning by the Milwaukee officer did not convert the *Terry* stop into a custodial interrogation. Further, because the Wauwatosa officer's questions were typical of those asked during a routine traffic investigation, and the surrounding circumstances would not lead a reasonable person to believe he or she was in custody, the *Miranda* warnings were not warranted. Therefore, we affirm Gruen's conviction.

## I. BACKGROUND.

On February 24, 1994, at approximately 1:30 a.m., a City of Milwaukee police officer, Officer Michael Barbian, came upon a car stuck in a snow bank on the median of Watertown Plank Road in Wauwatosa. Officer Barbian testified that the weather was cold, windy, and snowing, with a layer of fresh snow on the ground. Officer Barbian related that he saw a single individual, later identified as Gruen, walking away from the car and observed a single set of footprints exiting the passenger side of the car, moving around the front of the car and then traveling east on Watertown Plank Road. Officer Barbian also noted that the driver's door was wedged into a snowbank, making it difficult to open.

According to Officer Barbian, after witnessing the condition of the car and the tracks leading to Gruen, he then stopped Gruen to determine whether he owned the car or whether he knew who it belonged to. Gruen denied driving the car, stating that a friend of his was driving, but that he could not remember the friend's name. Officer Barbian then told Gruen that he needed

to call the Wauwatosa Police Department because it was their jurisdiction. Officer Barbian testified that, because it was so cold out, he "asked [Gruen] if he wanted to have a seat in my [police] van, and he indicated yeah, he would." Before placing Gruen in the van, Officer Barbian did a pat-down search and felt a set of keys in Gruen's pockets. Officer Barbian asked Gruen what they were, and Gruen said, "They're keys to my car." Officer Barbian then pulled them out of Gruen's pockets and confirmed that they were the keys to the car. Officer Barbian recalled that Gruen was not handcuffed when he was placed in the van, and that Gruen was not under arrest at the time, but rather, that "I was just temporarily detaining him . . . so Wauwatosa could investigate the accident." He noted that the back door to the van was closed, making it impossible for Gruen to open the door from the inside, but that the door was unlocked, and could be easily opened from the outside of the van.

Officer Barbian testified that Gruen was in the van for approximately ten to fifteen minutes before Wauwatosa police officer Brian Betchner arrived. Officer Barbian advised Officer Betchner of the information Gruen had already given before being placed in the van. Officer Barbian also told Officer Betchner that he believed Gruen was the driver of the car and that, in his opinion, Gruen was intoxicated.

Officer Betchner testified that after Officer Barbian opened the doors to the van, he saw Gruen sitting in the back of the van. Officer Betchner testified that, contrary to Officer Barbian's testimony, he believed that Gruen was in handcuffs, stating, "I can't be 100 percent sure, but for some reason, I think maybe he [Gruen] was [in handcuffs]."

Officer Betchner then asked Gruen what happened. Gruen told Officer Betchner that he "slid into a snow bank and that he would pay for the damages." After Gruen made that statement, Officer Betchner asked him, "So you were driving, then?" Gruen then replied that, "from what [I] remember[ ], [I] wasn't." Officer Betchner then asked him, "Well, then who was driving?" and Gruen replied something to the effect of: "Just let our attorneys settle this."

During his testimony, Officer Betchner stated that when he first observed Gruen he appeared to be in an intoxicated state and that Gruen appeared confused and kept falling asleep while he was talking to him. Officer Betchner testified that he placed Gruen under arrest based on Gruen's answers to questions, his appearance, and the earlier observations made by the Milwaukee police officer.

Gruen was charged in a two-count complaint with operating a motor vehicle while under the influence of an intoxicant, contrary to § 346.63(1)(a), STATS., and with operating a motor vehicle with a prohibited alcohol concentration of 0.08% or more, contrary to § 346.63(1)(b). Gruen moved to suppress the statements made while inside the van, arguing that they were custodial statements given without first being advised of his *Miranda* rights. The trial court denied the motion, finding that the questioning of Gruen was not a custodial interrogation but instead a temporary detention pursuant to § 968.24, STATS., and thus, the giving of *Miranda* rights was not required. The case went to trial and Gruen was convicted of both counts. However, pursuant to § 346.63(7)(b), a judgment of conviction and sentence was entered on the first count only. Gruen now appeals.

## II. ANALYSIS.

Two issues concern us in this appeal. First, did the fact that a separate set of questions was directed at Gruen, by the Wauwatosa officer who arrived at the scene to take over the investigation, convert the *Terry* stop initiated by the Milwaukee police into a custodial interrogation? The trial court found that it did not. Second, if the *Terry* stop continued at the time of the second questioning, did the evolving circumstances of the *Terry* stop result in Gruen being "in custody" as contemplated by *Miranda* when he answered the Wauwatosa officer's questions? The trial court did not address this question.

We conclude that at the time he was questioned by Wauwatosa Officer Betchner: (1) Gruen was being validly temporarily detained pursuant to *Terry v. Ohio* and § 968.24, STATS.; and (2) Gruen was not "in custody" for Fifth Amendment purposes because a reasonable person in Gruen's position would not have considered himself to be in custody, given the degree of restraint under the circumstances.

*A.   Was Gruen being validly detained pursuant to § 968.24, STATS.?*

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated. . . ." U.S. CONST. amend. IV. In *Terry v. Ohio*, 392 U.S. 1 (1968), the United States Supreme Court determined that the Fourth Amendment is not violated when law enforcement officers, in appropriate circumstances, detain and temporarily question a suspect, without arrest, for

589

investigative purposes. Section 968.24, STATS., has codified the rule promulgated in *Terry*. In reviewing a trial court's finding that a temporary detention under § 968.24 was valid, we will uphold the trial court's findings of fact unless they are against the great weight and clear preponderance of the evidence. *See State v. Jackson*, 147 Wis. 2d 824, 829, 434 N.W.2d 386, 388 (1989). Whether those facts satisfy the constitutional requirement of reasonableness presents a question of law, and therefore we are not bound by the trial court's decision on that issue. *See id.*

For an investigatory stop and temporary detention under *Terry v. Ohio*, and § 968.24, STATS., to be valid, an officer must reasonably suspect "in light of his or her experience" that some criminal activity has taken place or is taking place before stopping an individual. *See State v. King*, 175 Wis. 2d 146, 150, 499 N.W.2d 190, 191 (Ct. App. 1993). A determination of whether a temporary detention is reasonable is based on the totality of the circumstances. *See id.* If an officer has a suspicion, grounded in specific, articulable facts and reasonable inferences drawn from those facts, the officer may conduct a temporary detention of the individual in order to investigate further. *See id.*

Additionally, for a *Terry* stop to pass constitutional muster:

> [T]he detention must be temporary and last no longer than is necessary to effect the purpose of the stop. "Similarly, the investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time." A hard and fast time limit rule has been rejected. In assessing a detention for purposes of determining whether it

was too long in duration, a court must consider "whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it is necessary to detain" the suspect. In making this assessment, courts "should not indulge in unrealistic second-guessing."

*State v. Wilkens*, 159 Wis. 2d 618, 625–26, 465 N.W.2d 206, 209–10 (Ct. App. 1990) (internal footnoted citations omitted).

The trial court found that at the time Gruen was questioned by Officer Betchner he had not been arrested by either Officer Barbian or Officer Betchner, but instead, was being validly temporarily detained pursuant to § 968.24, STATS. We agree. Officer Barbian, stopping originally to investigate an apparent accident, had a reasonable suspicion that a crime may have been committed after speaking to Gruen, based on Gruen's responses and his appearance of intoxication. Officer Barbian believed the matter was the responsibility of the Wauwatosa police, and he was justified in detaining Gruen temporarily until the Wauwatosa police could arrive and further investigate. The placement of Gruen in Officer Barbian's police van was voluntary and reasonable, given the circumstances and the weather conditions. Officer Barbian stated he detained Gruen only until a police officer from the appropriate jurisdiction arrived. The fact that Gruen was detained for, at most, fifteen minutes, was also reasonable given the circumstances.

Gruen claims that Officer Betchner's arrival and his questioning of Gruen a second time, asking similar questions to those asked by Officer Barbian, turned the

*Terry* stop into a custodial arrest. Gruen argues that this questioning of him by the second officer on the scene effectively ended the *Terry* stop because the questions were designed to elicit incriminating evidence from him. We disagree. The problem posed by the involvement of two different police departments in a criminal traffic investigation is not unique and was addressed in *State v. Quartana*, 213 Wis. 2d 440, 570 N.W.2d 618 (Ct. App. 1997). In *Quartana*, the investigating officer, a state trooper, sent an officer from a different department to bring the suspect, who had walked home after the accident, back to the scene. *See id.* at 443–44, 570 N.W.2d at 620. In determining that this act fell within the ambit of § 968.24, this court said: "The state trooper, not the police officer, was in charge of the accident scene and the investigation. It was the trooper's responsibility to interview [the defendant] and complete the investigation." *Id.* at 449, 570 N.W.2d at 622. Implicit in this language is the acceptance of the fact that the investigating officer, although not the first officer to arrive at the scene, was entitled, indeed, obligated, to conduct his own independent investigation of the accident. Thus, we conclude that before arresting Gruen, Officer Betchner had a duty to investigate whether or not Gruen had committed a crime. Officer Betchner could not reasonably perform his duty without asking Gruen a few general, investigatory questions. Therefore, we conclude, as did the trial court, that at the time Gruen was questioned by Officer Betchner, Gruen was still being validly detained pursuant to § 968.24, STATS., and *Terry v. Ohio.*

B.   Was Gruen "in custody" for Miranda purposes?

Contrary to the trial court's decision, a finding that the questioning occurred during a valid *Terry* stop does not end the inquiry. Under *State v. Pounds*, 176 Wis. 2d 315, 500 N.W.2d 373 (Ct. App. 1993), even during a *Terry* stop, a defendant may be considered "in custody" for Fifth Amendment purposes and entitled to *Miranda* warnings prior to questioning. *See id.* at 322, 500 N.W.2d at 377 (court of appeals holds that defendant was "in custody" for Fifth Amendment purposes, even though he was only being detained pursuant to a *Terry* stop, stating that, "We disagree with the trial court's implicit assumption that *Miranda* is never implicated in the context of a *Terry* stop."). Therefore, whether or not Gruen was being detained pursuant to a *Terry* stop, or had been arrested for Fourth Amendment purposes, is not the determinative consideration. The only important inquiry is whether, for Fifth amendment purposes, he was "in custody." To determine whether a person is in custody for Fifth amendment purposes:

> The test is "whether a reasonable person in the defendant's position would have considered himself or herself to be in custody, given the degree of restraint under the circumstances." [*State v.*] *Swanson*, 164 Wis. 2d [437,] 446–47, 475 N.W.2d [148,] 152 [(1991)]. The totality of the circumstances must be considered when determining whether a suspect was "in custody" for the purpose of triggering *Miranda* protections. *California v. Beheler*, 463 U.S. 1121, 1125 (1983).

*Id.* at 321, 500 N.W.2d at 376.

In Wisconsin, according to *Pounds*, even if Gruen was merely detained pursuant to *Terry v. Ohio*, he still had a right to *Miranda* warnings if he was "in custody"

for Fifth Amendment purposes. The fact that a defendant was being detained pursuant to a *Terry* stop may make it less likely that the defendant was "in custody" for purposes of triggering the right to *Miranda* warnings. But the fact that a defendant was detained pursuant to a *Terry* stop does not automatically dispel the need for *Miranda* warnings. To the contrary, in order to determine whether *Miranda* warnings were required a court must consider the totality of the circumstances, including whether the defendant was detained pursuant to *Terry v. Ohio*, in order to determine whether a "reasonable person in the defendant's position would have considered himself or herself to be 'in custody,' given the degree of restraint under the circumstances." *See Swanson*, 164 Wis. 2d at 446–47, 475 N.W.2d at 152.

■

An examination of the totality of the circumstances includes such relevant factors as the defendant's freedom to leave the scene; the purpose, place and length of the interrogation; and the degree of restraint. *See State v. Leprich*, 160 Wis. 2d 472, 477, 465 N.W.2d 844, 846 (Ct. App. 1991); *Swanson*, 164 Wis. 2d at 446–47, 475 N.W.2d at 152. In exploring the degree of restraint, courts have also considered as relevant factors: (1) whether the defendant was handcuffed;[1] (2) whether a gun was drawn on the

---

[1] *See United States v. Smith*, 3 F.3d 1088, 1098 (7th Cir. 1993); *State v. Pounds*, 176 Wis. 2d 315, 321–22, 500 N.W.2d 373, 376–77 (Ct. App. 1993) (courts used fact that defendant was handcuffed as factor supporting decision that defendant was in custody for *Miranda* purposes). *See also United States v. Burns*, 37 F.3d 276, 281 (7th Cir. 1994) (court used fact that defendant was not handcuffed during serving of a search war-

defendant;[2] (3) whether a *Terry* frisk was performed;[3] (4) the manner in which the defendant was restrained;[4] (5) whether the defendant was moved to another location;[5] (6) whether the questioning took place in a police vehicle;[6] and (7) the number of police

---

rant to support decision that defendant was not in custody for *Miranda* purposes).

[2] *See Pounds*, 176 Wis. 2d at 321–22, 500 N.W.2d at 376–77 (court used fact that gun was drawn on defendant during questioning to support decision that defendant was in custody for *Miranda* purposes); *see Burns*, 37 F.3d at 281 (court used fact that officers did not brandish weapons to support decision that defendant was not in custody for *Miranda* purposes).

[3] *See State v. Rosse*, 478 N.W.2d 482, 486 (Minn. 1991) (court used fact that defendant was frisked to support conclusion that defendant was in custody for *Miranda* purposes); *but cf. State v. Scott*, 518 N.W.2d 347, 350 (Iowa 1994) (court found defendant not in custody for purposes of *Miranda* despite being frisked).

[4] *See Unites States v. Perdue*, 8 F.3d 1455, 1464 (10th Cir. 1993); *Pounds*, 176 Wis. 2d at 321–22, 500 N.W.2d at 376–77 (courts used fact that defendant had been ordered to the floor or ground at gunpoint before the questioning to support decisions that defendant was in custody for *Miranda* purposes).

[5] *See Pounds*, 176 Wis. 2d at 321–22, 500 N.W.2d at 376–77 (court used fact that defendant was transported from the scene of his original detention to another location in a squad car to support decision that defendant was in custody for *Miranda* purposes).

[6] *See United States v. Henley*, 984 F.2d 1040, 1042 (9th Cir. 1993) (court used fact that defendant was handcuffed and placed in back seat of police car to support conclusion that defendant was in custody for *Miranda* purposes); *but cf. State v. Warrell*, 534 N.E.2d 1237, 1239 (Ohio Ct. App. 1987) (court found that defendant was not in custody for *Miranda* purposes despite the fact that questioning took place in a police vehicle,

officers involved.[7] The fact that a defendant was being temporarily detained pursuant to *Terry v. Ohio*, and § 968.24, STATS., is obviously a relevant consideration, but is not by itself dispositive. *See Pounds*, 176 Wis. 2d at 322, 500 N.W.2d at 377. After considering these factors, in the context of the totality of the circumstances, we conclude that Gruen was not in custody for the purposes of *Miranda*.

At the time Gruen was questioned by Officer Betchner, he had not been arrested, and instead, was merely being temporarily detained pursuant to § 968.24, STATS. This fact, while not determinative, supports a conclusion that Gruen was not in custody for *Miranda* purposes.

Gruen was briefly detained in, and questioned inside of, a police van. Officer Barbian, however, testified that after he observed Gruen's vehicle, initially questioned him, and determined that the Wauwatosa Police Department needed to be notified, he asked Gruen if he wanted to have a seat in the police van because it was so cold out, and Gruen accepted his offer. A reasonable person is less likely to believe he or she is in custody when he or she is asked, rather than ordered, to do something by a police officer. Therefore, the fact that Officer Barbian asked Gruen whether he wanted to sit in the van due to the cold weather, rather than ordering him to do so, makes it less likely that Gruen was in custody for *Miranda* purposes.

and specifically took into consideration fact that the defendant was placed in the police vehicle because of the cold weather).

[7] *See Smith*, 3 F.3d at 1098; *Rosse*, 478 N.W.2d at 486 (courts used presence of at least seven police officers at the place of questioning to support conclusion that defendant was in custody for *Miranda* purposes).

Officer Barbian testified that while he and Gruen were waiting for the Wauwatosa police to arrive, although the back door to the van was not locked from the outside, it could not be opened from the inside. The record does not reveal whether Gruen knew he could not open the van from the inside. If he did know, it is more likely he was in custody; and if he did not know, it is less likely he was in custody. When Officer Betchner arrived and questioned Gruen, however, he opened the door to the police van, and spoke to Gruen while standing on one of the van's steps. Thus, at the time that Gruen was actually questioned, he was not locked inside of the vehicle, and, although he was in the van, these circumstances suggest it was more reasonable for Gruen to conclude he was not "in custody" at that time.

Gruen claims that Officer Barbian handcuffed him before placing him in the van. Officer Barbian testified at the suppression hearing with certainty that he did not handcuff Gruen. Officer Betchner testified, when asked whether he believed Gruen was handcuffed, "I do not recall, but I believe he was. I can't be a hundred percent sure. It was over a year ago," and further testified, "I can't be a hundred percent sure, but for some reason, I think maybe he was." The trial court did not make an explicit finding of fact as to whether or not Gruen was handcuffed. "When a trial court does not expressly make a finding necessary to support [a] legal conclusion, an appellate court can assume that the trial court made the finding in the way that supports its decision." *State v. Echols*, 175 Wis. 2d 653, 673, 499 N.W.2d 631, 636 (1993). If Gruen were handcuffed, that fact would strongly support the conclusion that he was in custody for *Miranda* purposes. Therefore, since the trial court concluded that Gruen was not in custody, we can assume that that trial court made an

597

implicit finding that he was not handcuffed. *See id.* This implicit finding is not clearly erroneous, and supports the conclusion that Gruen was not in custody for *Miranda* purposes.

Gruen was not detained for an unreasonable amount of time, given the fact that Officer Barbian was outside of his jurisdiction and needed to detain Gruen until the Wauwatosa police could arrive. Officer Barbian testified that Gruen was detained in the back of the van "offhand, I would say probably 10 to 15 minutes." Also, Officer Betchner questioned Gruen very briefly and only asked Gruen three short, general, common-sense investigatory questions: "What happened?," "Oh, so you were driving then?," and, "Well, then who was driving?" These facts support a conclusion that Gruen was not in custody for *Miranda* purposes.

Gruen was not moved to another location, nor transported to the police station, but instead, was questioned at the scene of the crime. Although Gruen was frisked for Officer Barbian's safety, he was not ordered to the ground, nor were guns drawn on him. Only two officers were involved in questioning Gruen, and each officer questioned Gruen at a different time. Under the totality of the circumstances, a reasonable person in Gruen's position would not have considered himself or herself to be in custody. Therefore, we conclude that Gruen was not in custody for the purposes of *Miranda*, and that the trial court correctly denied the motion to suppress.

*By the Court.*—Judgment and order affirmed.