COURT OF APPEALS
DECISION
DATED AND FILED

June 17, 2020

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2019AP2061-CR**

Cir. Ct. No. **2018CM1346**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT II

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

BRIAN VINCENT ROTOLO,

DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for Winnebago County: BARBARA H. KEY, Judge. *Affirmed*.

¶1 NEUBAUER, C.J.[1] Brian Vincent Rotolo appeals from a judgment convicting him of possession of tetrahydrocannabinols (THC) and of drug

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(f) (2017-18). All references to the Wisconsin Statutes are to the 2017-18 version.

paraphernalia, and he challenges the denial of his motion to suppress statements he made to police and evidence obtained from his car. Rotolo was questioned by police after his store manager heard him talking to other employees about using and selling drugs, and Rotolo eventually admitted that he had THC and paraphernalia in his car, and he consented to a search of the car. We conclude that when Rotolo made the statements and gave consent, he was not in custody requiring *Miranda*[2] warnings, but was instead temporarily detained while the police investigated the drug-related claims. We therefore affirm.

## BACKGROUND

¶2 On November 27, 2018, the City of Neenah Police Department dispatched officers to a McDonald's to follow up on a drug complaint. The store manager reported that her employee, Rotolo, had been talking about using drugs in his car during lunch and had been attempting to sell drugs to other employees, who were underage. The manager said she was going to fire Rotolo, and she wanted the officers to be nearby.

¶3 Officer Erik Douglas was the only witness to testify at the motion to suppress hearing, and the following facts are taken from his testimony. Douglas wore an activated body camera throughout this incident, and the video was introduced as an exhibit at the hearing, which the circuit court viewed. We have viewed it as well.

---

[2] *Miranda v. Arizona*, 384 U.S. 436, 444 (1966) (per the Fifth Amendment of the United States Constitution, no person should face custodial interrogation until his or her constitutional rights are explained, e.g., right to remain silent, right to attorney, etc.).

¶4      When Douglas arrived at the store at around 3:00 a.m., Rotolo was working on the kitchen line.  After speaking with the manager and receiving permission, Douglas went into the kitchen and asked Rotolo to meet with him in another area of the restaurant, which he described as "a side room to the lobby in kind of the play area."

¶5      While two other uniformed officers stood by, Douglas questioned Rotolo "in regards to whether or not he had drugs on his person or in his vehicle and whether or not he had been attempting to sell those to other employees." Douglas testified that the demeanor of the conversation was "calm."  Throughout the encounter, no officer brandished a weapon, placed Rotolo in handcuffs, or yelled at him.

¶6      Rotolo initially denied having any drugs, claiming that when Rotolo had been talking about drugs to the other employees, he was merely joking.  When Douglas asked Rotolo if they could search his vehicle, Douglas expressly told him that he could refuse consent.  Rotolo denied the request.  Consequently, Douglas made a call for a K-9 unit to perform a dog drug sniff.

¶7      Because the officers had been advised Rotolo possessed a pocket knife, one of the officers patted Rotolo down.  The video shows the officer advising Rotolo of the pat down and asking him if he had any weapons, to which Rotolo responded he had a pocket knife.  The officer asked, "[Y]ou don't have any drugs on you at all?"  Rotolo said he did not.  The officer located and removed the pocket knife, and found no other weapons or drugs.

¶8      The video shows that as the officer was completing the pat down, Rotolo asked if he was "stuck" or if he could leave on his "own will."  The officer

who searched Rotolo responded that he could not leave, stating "we're detaining you."

¶9    Rotolo admitted that he would occasionally smoke some "weed," but that he had not on that day. Douglas told Rotolo that if he had only "weed" in his car, that "it's a municipal citation—it's like a speeding ticket," as opposed to a criminal matter. Rotolo then told the officers that he had "a little bit of weed" in his car and agreed to a search. The questioning and pat down took a little over five minutes to perform, i.e., from the point Douglas made contact with Rotolo to the point Rotolo consented to a search of his car. The search revealed a bag of marijuana and some drug paraphernalia.

¶10    Douglas testified that after conducting the search, he issued municipal citations to Rotolo for possession, but after further investigation, he took Rotolo into custody, and Rotolo was charged with the previously noted criminal offenses.

¶11    Rotolo moved to suppress his statements and the search, asserting that he was in custody for purposes of *Miranda* when he was told that he was not free to leave and the officers continued to question him. The circuit court denied the motion, concluding that the totality of the circumstances did not show that Rotolo was in custody. Rotolo pled no contest to both counts and was convicted. He now appeals.

## DISCUSSION

¶12    When we review a circuit court's decision on a motion to suppress evidence, we apply a two-step standard. *State v. Eason*, 2001 WI 98, ¶9, 245 Wis. 2d 206, 629 N.W.2d 625. Unless the circuit court's factual findings are

clearly erroneous, we will uphold them. *Id.* We independently review, however, whether those facts violate constitutional principles. *Id.*

¶13     The issue is whether Rotolo was in custody before he told police he had THC in his car and consented to a search, such that he should have been given *Miranda* warnings. *See State v. Mitchell*, 167 Wis. 2d 672, 686, 482 N.W.2d 364 (1992). The *Miranda* warnings are required because "[t]he circumstances surrounding in-custody interrogation can operate very quickly to overbear the will of [the suspect]." *Miranda*, 384 U.S. at 469. "[T]he process of in-custody interrogation of persons suspected or accused of crime contains inherently compelling pressures which work to undermine the individual's will to resist and to compel [the individual] to speak where [the individual] would not otherwise do so freely." *Id.* at 467.[3]

¶14     Rotolo does not challenge the reasonableness of the initial questioning. The questioning was part of a valid investigatory *Terry*[4] stop. Rotolo asserts, however, that the investigatory stop evolved into a custodial interrogation for purposes of the Fifth Amendment, requiring *Miranda* warnings. The State bears the burden to establish by a preponderance of the evidence that the stop did not become custodial. *State v. Armstrong*, 223 Wis. 2d 331, 351, 588 N.W.2d 606 (1999).

---

[3] The Fifth Amendment of the United States Constitution states that "[no person] shall be compelled in any criminal case to be a witness against himself." The Wisconsin Supreme Court has interpreted article I, section 8(1) of the Wisconsin Constitution consistent with the United States Supreme Court's interpretation of the Fifth Amendment. *State v. Ward*, 2009 WI 60, ¶18 n.3, 318 Wis. 2d 301, 767 N.W.2d 236.

[4] *Terry v. Ohio*, 392 U.S. 1 (1968).

5

¶15    For constitutional purposes, we recognize two types of seizures:  an investigatory or **Terry** stop and an arrest.[5]  **State v. Young**, 2006 WI 98, ¶¶20, 22, 294 Wis. 2d 1, 717 N.W.2d 729; *see also* WIS. STAT. § 968.24 (codification of **Terry** standard).

¶16    An investigatory **Terry** stop involves brief questioning and is a minor infringement on personal liberty, such that it is constitutional under the Fourth Amendment if supported by reasonable suspicion that a crime has been committed or is being committed.  **Young**, 294 Wis. 2d 1, ¶20.  "Reasonable suspicion requires that a police officer possess specific and articulable facts that warrant a reasonable belief that criminal activity is afoot."  **Id.**, ¶21.

¶17    By contrast, a formal arrest for purposes of the Fifth Amendment, which requires **Miranda** warnings, "is a more permanent detention that typically leads to 'a trip to the station house and prosecution for crime,'" and requires probable cause to suspect that a crime has been committed.  **Young**, 294 Wis. 2d 1, ¶22 (citation omitted).  Whether a person has been arrested by questioning turns on "whether a reasonable person in the defendant's position would have considered himself or herself to be 'in custody,' given the degree of restraint under the circumstances."  **State v. Swanson**, 164 Wis. 2d 437, 446-47, 475 N.W.2d 148 (1991), *overruled on other grounds by* **State v. Sykes**, 2005 WI 48, ¶27, 279 Wis. 2d 742, 695 N.W.2d 277.

---

[5] The Fourth Amendment of the United States Constitution and the Wisconsin Constitution protect the right to be free from unreasonable searches and seizures, and the provisions are generally construed in the same way.  U.S. CONST. amend. IV; WIS. CONST. art. I, § 11; *see also* **State v. Kramer**, 2009 WI 14, ¶18, 315 Wis. 2d 414, 759 N.W.2d 598; **State v. Young**, 2006 WI 98, ¶30, 294 Wis. 2d 1, 717 N.W.2d 729.

¶18    In order to make that determination, we look at the totality of the circumstances. *State v. Lonkoski*, 2013 WI 30, ¶28, 346 Wis. 2d 523, 828 N.W.2d 552.   Relevant factors include (1) the defendant's freedom to leave; (2) the purpose, place, and length of the interrogation; and (3) the degree of restraint. *State v. Gruen*, 218 Wis. 2d 581, 594, 582 N.W.2d 728 (Ct. App. 1998). Viewing the totality of the circumstances, we conclude that the questions and conduct of the officers remained part of an investigatory *Terry* stop and did not evolve into a custodial interrogation before Rotolo admitted to having marijuana in his car and consenting to a search.

¶19    As noted, the defendant's freedom to leave is one factor when considering whether a custodial interrogation occurred. *See Gruen*, 218 Wis. 2d at 594.  The State acknowledges that Rotolo was not free to leave, as he was being detained, and was told so, for the purpose of investigating the drug complaint.

¶20    Rotolo being detained pursuant to a *Terry* stop does not convert the encounter into a custodial interrogation.  A *Terry* seizure is not synonymous with custody under the Fifth Amendment.  *See Berkemer v. McCarty*, 468 U.S. 420, 440 (1984) (persons who are temporarily detained as part of an ordinary noncoercive traffic stop are not "in custody" for *Miranda* purposes); *Gruen*, 218 Wis. 2d at 594 ("The fact that a defendant was being detained pursuant to a *Terry* stop may make it less likely that the defendant was 'in custody' for purposes of triggering the right to *Miranda* warnings.").  When conducting a *Terry* stop, an officer may diligently elicit information to determine the suspect's identity and obtain information to confirm or dispel the officer's suspicions quickly, during which time it is necessary to detain the suspect. *Berkemer*, 468 U.S. at 439-40. Thus, the inability to leave the scene is "not the determinative consideration," *Gruen*, 218 Wis. 2d at 593, but a "factor" of what is the "ultimate" question:

whether there was a "restraint on freedom of movement of the degree associated with a formal arrest," *Lonkoski*, 346 Wis. 2d 523, ¶6. *See Gruen*, 218 Wis. 2d at 595-96 (determining that the defendant was not in custody for *Miranda* purposes because he had not been arrested, but was merely detained for questioning under WIS. STAT. § 968.24 (codification of the *Terry* investigatory stop)). In other words, the objective circumstances must be the functional equivalent of a formal arrest.

¶21    Other factors are the purpose, place, and length of the interrogation. *Gruen*, 218 Wis. 2d at 594. The purpose was plainly an investigation into credible allegations of drug use and attempted selling of drugs. No argument can be made, and Rotolo makes no such argument, as to the legitimacy and necessity of the officers' purpose here. The place of the questioning also weighs against Rotolo's "in custody" argument. Rotolo asserts that, because the questioning took place while he was "on the clock" at work, it would make him believe that he was not free to leave. Rotolo's argument is without merit. Rather than question Rotolo in front of co-employees and customers, Douglas took him a short distance to a more open area of the store. The store manager asked for police presence when she terminated Rotolo, and the drug activity at issue took place when Rotolo was working and in his car. Moreover, this was the least intimidating place to conduct the questioning, as opposed to being questioned in a squad car, a small private room, or at the police station. *See United States v. James*, 113 F.3d 721, 727 (7th Cir. 1997) (rejecting the argument that questioning the defendant at his workplace was coercive). The length of the questioning also favors a conclusion that Rotolo was not in custody. It took approximately five minutes from the time Douglas made contact with Rotolo to the point that Rotolo gave consent to search the car.

Investigating a drug complaint and conducting a pat down could hardly take less time.

¶22     Another factor is the degree of restraint.  When evaluating the restraint of the defendant, courts have considered the following circumstances as relevant:  (1) was the defendant handcuffed, (2) was a gun drawn, (3) was a *Terry* frisk performed, (4) in what manner was the defendant restrained, (5) was the defendant moved, (6) did the questioning occur in a police vehicle, and (7) how many police were involved?  *Gruen*, 218 Wis. 2d at 594-96 (see case for authorities on each of these factors).

¶23     Considering all relevant circumstances, we conclude that the degree of restraint was minimal and supports a noncustodial determination.  Rotolo was not handcuffed; no guns were drawn; although Rotolo was frisked, it was because the officers were told beforehand that he had a knife in his possession; the video shows that the manner of questioning was casual and "calm" (as described by Douglas), was performed in a location familiar to Rotolo and took place in an open room of the store with many windows and near a play area; although Rotolo was asked to move from the kitchen to near the play area, making that move was less coercive and intimidating than the officers questioning him in front of coemployees and customers, and the move was only a short distance from the kitchen, *see* WIS. STAT. § 968.24 (requiring that the detention and temporary questioning take place "in the vicinity" of where the individual was stopped); the questioning did not take place in a police vehicle or, for that matter, at a police station; and although three officers were involved, Douglas did most of the questioning himself and the video shows that the officers maintained a respectful distance from Rotolo.  We also note that when Douglas first asked to conduct a vehicle search, he expressly informed Rotolo that he could refuse the search.

¶24 The totality of these circumstances support the circuit court's determination that the temporary detention of Rotolo did not evolve into a custodial interrogation. The detention was not an arrest or its functional equivalent where the coercive aspects of custodial questioning were designed to overcome Rotolo's free choice.

¶25 Finally, Rotolo asserts that the questioning became custodial because the officers had "accused" him of using and possessing drugs. We disagree with this interpretation. Rotolo himself admitted that he talked to coemployees about drugs, but that it was done in a joking manner, and Rotolo also admitted to occasionally using marijuana. The officers merely repeated to Rotolo what he had already admitted to, as well as the information they received from the manager. We see nothing "accusatory" in nature about the questioning. *See Oregon v. Mathiason*, 429 U.S. 492, 495 (1977) ("Any interview of one suspected of a crime by a police officer will have coercive aspects to it, simply by virtue of the fact that the police officer is part of a law enforcement system which may ultimately cause the suspect to be charged with a crime.").

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* Wis. Stat. Rule 809.23(1)(b)4.

10