COURT OF APPEALS
DECISION
DATED AND FILED

December 26, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2024AP470**

Cir. Ct. No. **2021CT597**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT I

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

LAVELLE EDGAR YOUNG,

DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for Milwaukee County: JONATHAN D. RICHARDS, Judge. *Affirmed*.

¶1 DONALD, P.J.[1] Lavelle Edgar Young appeals the judgment, entered upon a jury's verdict, convicting him of operating a motor vehicle while

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(c) (2021-22). All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

under the influence of an intoxicant as a second offence contrary to WIS. STAT. § 346.63(1)(a). Young argues that the evidence recovered from the search of his vehicle, and the statements he made prior to his arrest should have been suppressed because the officer lacked reasonable suspicion and Young was not administered *Miranda*[2] warnings. For the following reasons, this court affirms.

## BACKGROUND

¶2 On April 5, 2020, then-police officer for the City of Franklin Adam Rogge was patrolling motel parking lots along South 27th Street in an area that was considered a high crime area. At approximately 3:00 a.m., Officer Rogge noticed that the driver of a vehicle parked in a motel parking lot—who was subsequently identified as Young—was "slumped over the center console." Officer Rogge then exited his vehicle to check on Young's wellbeing. He approached the passenger side of Young's vehicle and knocked a few times on the window. After a delay of approximately twenty seconds, Young picked his head up and rolled down the passenger side window.

¶3 Officer Rogge explained why he had made contact with Young and Young indicated that he was fine. During this exchange Officer Rogge observed the odors of both alcohol and marijuana emanating from the vehicle, an open bottle of gin, and that Young had bloodshot eyes, dilated pupils, and slurred speech.

¶4 After briefly talking with Young, Officer Rogge called for backup and searched Young's vehicle finding "nothing of evidentiary value." Officer

---

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

Rogge did notice that the keys were in the vehicle turned to the auxiliary position and that the hood was warm. Officer Rogge also asked Young if he could search his person and after Young consented, searched, and found nothing of evidentiary value. Officer Rogge had questioned Young and Young had informed him that he had recently driven to this motel and that he had been drinking and smoking marijuana earlier that day. At this point, Officer Rogge asked Young to perform field sobriety tests and Young cooperated. After Young performed poorly on the field sobriety tests, Officer Rogge arrested him.

¶5      Before the circuit court, Young moved to suppress all of the evidence obtained during his encounter with the police on the grounds that Young was unlawfully seized and searched. The circuit court found Officer Rogge's testimony credible and that the community caretaking exception to unlawful seizures applied. The court also found that Officer Rogge's observations regarding the open bottle of gin in the vehicle, the smells of alcohol and marijuana, and the warm hood of the vehicle gave rise to the requisite reasonable suspicion to support Officer Rogge's investigation of Young after he had checked on Young's wellbeing. Therefore, the circuit court denied Young's motion to suppress the evidence.

¶6      Young then moved to suppress the statements he made to the officers present, arguing that he was in custody and not provided with *Miranda* warnings prior to the officers' questioning. The circuit court found that the officers were engaged in a routine investigation and made inquiries relevant to operating a vehicle while intoxicated, and that during the course of this questioning Young made several statements that were unprompted by the officers. The circuit court also considered the circumstances and found that Young was not in custody and that Young's statements "were the voluntary product of a free and

unconstrained will, reflecting the deliberateness of choice." The court focused on how Young could have refused to answer the questions and was given the option to refuse to take the field sobriety tests. Thus, the circuit court denied Young's motion. Ultimately, after a jury trial Young was convicted of operating a vehicle while under the influence of an intoxicant as a second offence.

¶7    Young appeals.

## DISCUSSION

¶8    "Our review of an order granting or denying a motion to suppress evidence presents a question of constitutional fact" which we review under a two part inquiry. *State v. Tullberg*, 2014 WI 134, ¶27, 359 Wis. 2d 421, 857 N.W.2d 120 (citation omitted). "First, we review the circuit court's findings of fact, and uphold them unless they are clearly erroneous. Second, we review *de novo* the application of constitutional principles to those facts." *State v. Martin*, 2012 WI 96, ¶28, 343 Wis. 2d 278, 816 N.W.2d 270.

¶9    Young argues that the evidence discovered from the search of his vehicle should have been suppressed because Officer Rogge lacked the requisite reasonable suspicion to seize Young, and that the statements Young made to Officer Rogge should have been suppressed because he was in custody and not provided *Miranda* warnings. We disagree, and take each argument in turn.

### I.    Seizure

¶10    The parties dispute whether Young was seized when Officer Rogge initially contacted him. Young argues that Officer Rogge's knocking on the passenger side window was a seizure because he did not reasonably believe he was free to disregard Officer Rogge's presence. We disagree.

4

¶11    Both the Fourth Amendment to the United States Constitution and article I, section 11 of the Wisconsin Constitution guarantee "[t]he right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures[.]"[3]  However, "[n]ot every contact between the police and a citizen constitutes a seizure." *State v. Young*, 2006 WI 98, ¶66, 294 Wis. 2d 1, 717 N.W.2d 729.  "[N]on-seizure encounters are not governed by the Fourth Amendment." *County of Grant v. Vogt*, 2014 WI 76, ¶26, 356 Wis. 2d 343, 850 N.W.2d 253.  "[P]olice-citizen contact becomes a seizure within the meaning of the Fourth Amendment 'when an officer by means of physical force or show of authority, has in some way restrained the liberty of a citizen[.]'" *Young*, 294 Wis. 2d 1, ¶66 (citations omitted).  "[W]hen determining whether an individual was seized, we must replace the individual with the paradigmatic reasonable person and focus on the officer's conduct under the totality of the circumstances." *Vogt*, 356 Wis. 2d 343, ¶31.

¶12    In *Vogt*, our supreme court examined a situation similar to the one before us where an officer parked his squad car directly behind a vehicle in a parking lot before exiting, knocking loudly on the vehicle's window, and ordering the driver to lower the window. *Id.*, ¶¶6-7, 40.  The *Vogt* court held that this initial contact did not constitute a seizure because the driver still had room to leave by driving forward and that the officer's behavior was indicative of simply making contact with the driver. *Id.*, ¶¶41-43.  The *Vogt* court further explained that "when

---

[3] For readability we refer to the protections under both the Fourth Amendment to the United States Constitution and article I, section 11 of the Wisconsin Constitution by reference to just the Fourth Amendment in this decision. *See State v. Kramer*, 2009 WI 14, ¶18, 315 Wis. 2d 414, 759 N.W.2d 598 ("Historically, we generally have interpreted Article I, Section 11 to provide the same constitutional guarantees as the Supreme Court has accorded through its interpretation of the Fourth Amendment.").

an officer parks near a person's vehicle, gets out, and knocks on the person's window, the officer has not necessarily displayed sufficient authority to cause a reasonable person to feel that he or she was not free to leave." *Id.*, ¶38.

¶13 Like the driver in *Vogt*, the record here is clear that Young's liberty was not restrained because a reasonable person in Young's situation would have felt free to leave. Young was not stopped by Officer Rogge but instead was approached while Young was parked in a motel parking lot after Officer Rogge became concerned upon seeing Young slumped over in his vehicle. Young was not blocked in by Officer Rogge's squad car and could have backed out of his parking space. Furthermore, Young was in the driver's seat and Officer Rogge approached the passenger side of the vehicle, thus, Young could have also freely opened his door, exited his vehicle, and entered the motel.

¶14 Although Young argues that Officer Rogge's knocking compelled Young to respond, "a law enforcement officer's knock on a vehicle window does not automatically constitute a seizure." *Id.*, ¶53. The circumstances surrounding Officer Rogge's initial contact with Young were not so intimidating as to transform the knocking into a seizure. *See id.* Therefore, we conclude that based on the totality of the circumstances Young was not seized when Officer Rogge initially contacted him and sought to confirm whether he needed emergency assistance.[4]

---

[4] Because we conclude that Young was not seized during Officer Rogge's initial contact with him, we do not address the parties' arguments regarding whether the community caretaking exception to seizures devoid of probable cause or reasonable suspicion apply here. *See State v. Blalock*, 150 Wis. 2d 688, 703, 442 N.W.2d 514 (Ct. App. 1989) ("[C]ases should be decided on the narrowest possible ground[.]").

¶15    Young also argues that after Officer Rogge confirmed that Young did not need medical assistance the interaction turned into a seizure which lacked the requisite reasonable suspicion. The State contends that the observations Officer Rogge made during his initial contact with Young constituted sufficient reasonable suspicion to justify any subsequent search or seizure. We agree with the State.

¶16    For an officer to have reasonable suspicion that a crime has been or will be committed the "officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant" the seizure. *Terry v. Ohio*, 392 U.S. 1, 21 (1968). "Reasonable suspicion is 'a low bar,'" requiring more than a mere hunch, but less proof than is necessary to support probable cause. *State v. Nimmer*, 2022 WI 47, ¶25, 402 Wis. 2d 416, 975 N.W.2d 598 (citation omitted).

¶17    During Officer Rogge's initial contact with Young he observed odors of both alcohol and marijuana emanating from the vehicle and an open bottle of gin in the vehicle. These observations were sufficient for Officer Rogge to reasonably suspect that Young had operated a vehicle while intoxicated thus permitting him to switch his focus from checking on Young's condition to investigating Young. *See Young*, 294 Wis. 2d 1, ¶¶21-22. Therefore, we conclude that Young's Fourth Amendment rights were not violated, thus, the circuit court did not err by denying Young's motion to suppress.

## II.    *Miranda* Warnings

¶18    Next we turn to Young's argument that the statements he made prior to his arrest should have been suppressed because he was never provided *Miranda* warnings. The State responds that *Miranda* warnings were not necessary because

Young was not in custody when he made statements to the police. We agree with the State.

¶19 *Miranda* warnings[5] are necessary to protect a person's Fifth and Fourteenth Amendment privilege against compulsory self-incrimination when he or she is subject to a "custodial interrogation." *Rhode Island v. Innis*, 446 U.S. 291, 297 (1980). Custodial interrogation refers to "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Berkemer v. McCarty*, 468 U.S. 420, 428 (1984). To determine whether a person is in custody, we look at the totality of the circumstances to consider "whether 'a reasonable person would not feel free to terminate the interview and leave the scene.'" *State v. Bartelt*, 2018 WI 16, 379 Wis. 2d 588, ¶31, 906 N.W.2d 684 (citation omitted).

¶20 Relevant to this inquiry are factors including but not limited to "the degree of restraint; the purpose, place, and length of the interrogation; and what has been communicated by police officers." *Id.*, ¶32. Additionally, we consider "whether the suspect is handcuffed, whether a weapon is drawn, whether a frisk is performed, the manner in which the suspect is restrained, whether the suspect is moved to another location, whether questioning took place in a police vehicle, and the number of officers involved" as relevant to the degree a person is restrained *Id.* (citation omitted).

---

[5] *Miranda* warnings are "namely, that the defendant be informed 'that he [or she] has the right to remain silent, that anything he [or she] says can be used against him [or her] in a court of law, that he [or she] has the right to the presence of an attorney, and that if he [or she] cannot afford an attorney one will be appointed for him [or her] prior to any questioning if he [or she] so desires'—or their equivalent." *Rhode Island v. Innis*, 446 U.S. 291, 297 (1980) (citing *Miranda*, 384 U.S. at 478-79).

¶21    Here, all of the questioning took place in a publicly accessible parking lot, initially while Young was inside of his vehicle, but primarily while he was outside of it.  At the outset only Officer Rogge was present but he was soon joined by two other officers.  Young was not in handcuffs, and the entire pre-arrest exchange took approximately forty minutes.  Young cooperated with the officers and made several unprompted statements.  Furthermore, Young was specifically asked to perform field sobriety tests, informed he did not have to if he did not want to, and in response Young indicated that he was willing and performed the tests.  *See* ***State v. Gruen***, 218 Wis. 2d 581, 596, 582 N.W.2d 728 (Ct. App. 1998) ("A reasonable person is less likely to believe he or she is in custody when he or she is asked, rather than ordered, to do something by a police officer.").

¶22    Young argues that the presence of three officers and repeated questions made him reasonably consider himself in custody.  However, throughout the questioning Young gave inconsistent information.  A reasonable person under these circumstances would not interpret multiple similar questions in response to inconsistent information as a restraint on their freedom to leave.  Based on the totality of the circumstances, we conclude that Young was not in custody prior to his arrest; therefore, ***Miranda*** warnings were not required and the circuit court properly denied the motion to suppress.

## CONCLUSION

¶23    We conclude that Young was not seized when Officer Rogge initially contacted him to check on his welfare and that Officer Rogge's observations during his initial contact with Young constituted sufficient reasonable suspicion that Young had operated a vehicle while under the influence of an intoxicant.  We also conclude that Young was not in custody while he was

talking to the officers prior to his arrest. Therefore, Young's constitutional rights were not violated. Accordingly, we affirm.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.