## COURT OF APPEALS
## DECISION
## DATED AND FILED

## May 7, 2026

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP952-CR**

STATE OF WISCONSIN

Cir. Ct. No. **2018CT289**

IN COURT OF APPEALS
DISTRICT IV

---

STATE OF WISCONSIN,

　　PLAINTIFF-RESPONDENT,

V.

KARA S. KLUCK,

　　DEFENDANT-APPELLANT.

---

　　　　　APPEAL from a judgment of the circuit court for Portage County: PATRICIA BAKER, Judge. *Affirmed*.

　　¶1　　TAYLOR, J.[1]　Kara S. Kluck appeals a judgment of conviction for operating a motor vehicle while under the influence of a controlled substance as a

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(f) (2023-24). All references to the Wisconsin Statutes are to the 2023-24 version.

third offense ("OWI-3rd") in violation of WIS. STAT. § 346.63(1)(a). In the circuit court, Kluck moved to suppress statements and evidence based on an alleged unconstitutional custodial interrogation in violation of the Fifth Amendment of the United States Constitution and Article I, Section 8 of the Wisconsin Constitution. The court denied Kluck's motion. Kluck was ultimately convicted of OWI-3rd by a jury.

¶2      On appeal, Kluck argues that the circuit court erred when it concluded that Kluck was not in custody until she was arrested, and therefore, no unconstitutional custodial interrogation occurred before that time. I reject Kluck's arguments and affirm.

## BACKGROUND

¶3      The following material facts are undisputed.

¶4      In November 2018, in the County of Portage, Village of Plover, an anonymous caller reported to law enforcement that a Chevrolet Malibu, with an identified license plate number, was being driven in a manner that included nearly striking construction barrels, with the car muffler dragging on the road and the hazard lights activated. It was also reported that the driver was displaying "erratic" body movements. Police Officer Alan Raasoch with the Stevens Point Police Department was on patrol in the area when he received the report from dispatch and responded to the call. Raasoch observed a car matching the description and license plate number and activated his emergency lights. Raasoch observed the vehicle make a wide right turn, crossing the centerline of the road, and coming to a stop in a driveway entrance to a car wash, blocking entry. Another law enforcement officer who had been on duty with Raasoch was also

2

present. A police trainee and a supervising officer arrived together in another vehicle for observation and training purposes.

¶5 After the vehicle stopped, Raasoch approached the vehicle on foot. Raasoch observed that the driver seemed confused and jittery, but he did not detect an odor of intoxicants. Because the driver had stopped her vehicle where it blocked customer traffic, Raasoch directed the driver to move her vehicle to another location in the parking lot. The driver had difficulty comprehending this direction, which Raasoch had to repeat several times.

¶6 Raasoch identified the driver as Kluck through her license plate registration and was aware that Kluck recently had her driver's license reinstated and had two previous OWI convictions. Once Kluck pulled into the parking lot, Raasoch reengaged with Kluck and observed that Kluck was continuously making restless body movements, that she acted "jittery" and was fidgeting with her hands, and that she provided only evasive answers to his questions.

¶7 Raasoch believed, based on his prior experience, that Kluck was possibly under the influence of a drug. Kluck denied being on any medication or drug.

¶8 Raasoch directed Kluck to exit her vehicle for field sobriety tests, and Raasoch had to repeat the instructions for each test several times. Kluck indicated clues of impairment on the Horizontal Gaze Nystagmus and the Walk-and-Turn tests. Kluck was unable to complete the One-Leg-Stand test due to a back injury. Kluck denied taking any pain medication for her back injury.

¶9 Raasoch told Kluck that he concluded Kluck was not impaired by alcohol, but that Kluck had "something on board" and reiterated his concern about

Kluck's ability to drive. After insisting that she had only consumed caffeine, Kluck admitted she had taken one tablet of Oxycodone within the past 40 hours. Raasoch asked if there were any medications in Kluck's vehicle or if she would consent to a search of her vehicle. Kluck continued to be evasive in her responses to those and various other questions. Raasoch arrested Kluck for OWI-3rd.

¶10    After her arrest, Kluck consented to a blood draw. The results of the blood draw showed the presence of Oxycodone, Diazepam, and Nordiazepam, which are controlled substances.

¶11    The circuit court denied Kluck's motion to suppress, concluding that Kluck was not in custody until Raasoch arrested Kluck.

¶12    In February 2022, a jury found Kluck guilty of OWI-3rd.[2]  Kluck was sentenced to 45 days in jail, her driver's license was revoked for 24 months, and she was ordered to install an ignition interlock device in her vehicle for 24 months and to pay a $766.00 fine and court costs. Kluck appeals the judgment of conviction and the denial of her suppression motion.

## DISCUSSION

¶13    On appeal, Kluck argues that her right against self-incrimination was violated when she was detained and interrogated without *Miranda* warnings.[3] Kluck argues that after her vehicle was stopped, she "was surrounded by four

---

[2] The prosecution of this case was delayed, in part, by the COVID-19 pandemic and the resulting disruption to the court system and the ability of circuit courts to conduct jury trials.

[3] *Miranda v. Arizona*, 384 U.S. 436, 444 (1966), requires police officers to inform a person of their right to remain silent and their right to an attorney before a custodial interrogation occurs.

officers who persistently, continuously questioned her in the middle of a parking lot for nearly a quarter of an hour" and that her freedom was curtailed to "the degree associated with formal arrest." Based on the undisputed factual record, I conclude Kluck was not in custody until she was arrested.

¶14 Police officers may temporarily detain and question individuals without subjecting them to arrest. WIS. STAT. § 968.24 (codifying *Terry v. Ohio*, 392 U.S. 1 (1968) (holding that under certain circumstances, police may temporarily detain a person for additional investigation into possible criminal behavior))[4]; *see* *State v. Blatterman*, 2015 WI 46, ¶18, 362 Wis. 2d 138, 864 N.W.2d 26 ("The Wisconsin Legislature codified the *Terry* constitutional standard in WIS. STAT. § 968.24."). Pursuant to the Fifth Amendment of the United States Constitution and Article I, Section 8 of the Wisconsin Constitution, no person shall be compelled to incriminate themselves without due process of law. *State v. Bartelt*, 2018 WI 16, ¶26, 379 Wis. 2d 588, 906 N.W.2d 684.[5] Once a person is taken into custody or otherwise restrained by police, *Miranda* warnings must be

---

[4] WISCONSIN STAT. § 968.24 states:

> After having identified himself or herself as a law enforcement officer, a law enforcement officer may stop a person in a public place for a reasonable period of time when the officer reasonably suspects that such person is committing, is about to commit or has committed a crime, and may demand the name and address of the person and an explanation of the person's conduct. Such detention and temporary questioning shall be conducted in the vicinity where the person was stopped.

[5] The Fifth Amendment of the United States Constitution states: "[no person] shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law." Article I, Section 8 of the Wisconsin Constitution states: "[n]o person may be held to answer for a criminal offense without due process of law." With exceptions, our supreme court has generally interpreted this provision of our state constitution consistent with the United States Supreme Court's interpretation of the Fifth Amendment. *State v. Ward*, 2009 WI 60, ¶18 n.3, 318 Wis. 2d 301, 767 N.W.2d 236.

provided before an interrogation takes place. ***Miranda v. Arizona***, 384 U.S. 436, 444 (1966); *see also **State v. Dobbs***, 2020 WI 64, ¶53, 392 Wis. 2d 505, 945 N.W.2d 609 (A custodial interrogation occurs when police officers question a person after the person was taken into custody or otherwise restrained.). If ***Miranda*** is violated, the evidence obtained during a custodial interrogation may be inadmissible at trial. ***Dobbs***, 392 Wis. 2d 505, ¶52.

¶15    Whether a person is in custody and interrogated in violation of ***Miranda*** is a question of constitutional fact. ***Id.***, ¶53. A circuit court's factual findings are upheld unless clearly erroneous, and the determination of whether, based on the facts, a person was in custody for purposes of ***Miranda***, is reviewed independently. ***Id.***, ¶28. A person is "in custody" if they are formally arrested or if there is restraint on the person's freedom of movement akin to a formal arrest. ***Bartelt***, 379 Wis. 2d 588, ¶31.

¶16    The determination of whether a person was in custody when they were questioned by police officers requires considering whether, under the totality of the circumstances, a reasonable person would not feel free to terminate the interview and leave the scene. ***State v. Gruen***, 218 Wis. 2d 581, 593-96, 582 N.W.2d 728 (Ct. App. 1998). Some factors to be considered in making this determination are: the person's ability to leave the scene; the purpose, place, and length of time of the interrogation; and the degree of restraint imposed on the person. ***Id.*** at 594. When assessing the degree of restraint, the following factors are considered: whether the person was handcuffed; whether police drew their firearms on the person; whether police conducted a ***Terry*** frisk of the person; the manner in which the person was restrained; whether the person was questioned in a police vehicle; and the number of police officers involved. ***Id.*** at 594-95.

6

¶17 Under the totality of the circumstances in this case, I conclude that Kluck was not in custody for the purposes of *Miranda* until she was arrested. In other words, no reasonable person would believe that they were not free to leave before Kluck's arrest. Consistent with WIS. STAT. § 968.24, Raasoch questioned and investigated Kluck before arresting her and informing her of her *Miranda* rights. The circuit court found that: the stop was short; Raasoch was investigating the cause of Kluck's erratic driving which was reported by an anonymous caller; Kluck acted jittery and provided evasive answers to Raasoch's direct questions; and Raasoch almost exclusively questioned Kluck, as opposed to the three other officers present.

¶18 The record additionally demonstrates that none of the additional restraint factors identified in *Gruen* support the conclusion that Kluck was in custody. The relatively brief stop occurred in a public parking lot after an anonymous caller reported Kluck's vehicle for erratic driving. Kluck was not handcuffed, she was not placed in a police vehicle, and the police did not draw their firearms to restrain her. Although Raasoch asked Kluck to move her vehicle to another location in the parking lot after she was stopped, this was for the purpose of removing Kluck's car from the public driveway she was blocking. Even though four officers were on the scene, the three other officers mostly observed the interaction for training purposes. These facts do not result in a determination that Kluck was in custody prior to her arrest.

¶19 Kluck argues that all of her statements from the traffic stop should be suppressed because, under the totality of the circumstances, a reasonable person in Kluck's position would have considered herself to be in custody during all 13 minutes of the interaction. She alleges that she was intimidated from "the nonstop interrogation" by Raasoch and three other officers present, which transformed the

7

questions from permissible to those designed to obtain incriminatory responses which is prohibited by *Miranda*. I reject this argument. Raasoch primarily asked the questions which were consistent with investigating a report of an erratic driver. Although one of the other officers stood in close proximity to Raasoch, the two other officers appeared to merely observe.

¶20 Further, Kluck does not detail the specifics about what was intimidating about the presence of the four officers, with cites to the factual record, nor expound on her assertion that the questioning was designed to obtain incriminatory responses. We will not further address these arguments because they are undeveloped. *See Dieck v. Unified Sch. Dist. of Antigo*, 157 Wis. 2d 134, 148 n.9, 458 N.W.2d 565 (Ct. App. 1990) (unsupported factual assertions need not be considered without a record cite); *see also State v. Pettit*, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992) (a court need not consider arguments that are unsupported by legal citations or are otherwise undeveloped).

¶21 Kluck additionally argues that because she asked Raasoch about whether she was going to be arrested, the facts of her case are similar to *Dobbs*, and her motion to suppress should have been granted. I reject this argument because the facts of Kluck's case are distinguishable. In *Dobbs*, after police observed the defendant's damaged vehicle stopped on the side of the road, the defendant was immediately handcuffed and placed in the back of a locked police vehicle; the defendant was advised that he was being detained for a suspected hit and run homicide; and the defendant was questioned by police while he was handcuffed in the back of the police vehicle after stating "I take it I'm going to jail." *Dobbs*, 392 Wis. 2d 505, ¶¶5-8, 61-65. Only after three hours of confined contact with police, which included field sobriety testing, transportation to a hospital, and medical testing for intoxicants, was the defendant advised of his

*Miranda* rights. *Id.*, ¶¶10-12, 63. In the totality of the circumstances analysis, the relevant factors indicated that the defendant was in custody. As discussed, none of these factors arose in Kluck's case, and the totality of the circumstances does not establish that Kluck was in custody until she was arrested by Raasoch.

## CONCLUSION

¶22 For the reasons set forth above, I affirm.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.